# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3361

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska |
| Donald Lupino, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  April 19. 2002

Filed:  September 3, 2002

_____

Before HANSEN, Chief Judge, and McMILLIAN and MORRIS SHEPPARD
ARNOLD, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Donald Lupino appeals from a final judgment entered in the United States District Court for the District of Nebraska sentencing him to ninety-two months imprisonment after a jury returned verdicts of guilty on two counts of assault. United States v. Lupino, No. 4:00CR281 (D. Neb. Sept. 24, 2001) (judgment and sentence). For reversal, Lupino argues that the district court abused its discretion by allowing the arresting officer to testify that Lupino offered to sell him marijuana. For the reasons expressed below, we affirm the judgment of the district court.

Jurisdiction was proper in the district court pursuant to 18 U.S.C. §§ 1153 (offenses committed by Native American within Native American territory) and 3231 (federal criminal jurisdiction). This court has jurisdiction pursuant to 28 U.S.C. § 1291 (final decisions). The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(b).

## I. Background

On October 18, 2000, a federal grand jury returned a two-count indictment against Lupino, who is Native American, charging that he assaulted his cousin Tyrone Wells, who also is Native American, within the territorial limits of the Omaha Indian Reservation ("the Reservation"). Specifically, the indictment charged Lupino with (1) assault with a dangerous weapon, in violation of 18 U.S.C. §§ 113(a)(3) and 1153, and (2) assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 113(a)(6) and 1153. On June 20, 2001, the jury trial began. The government's evidence at trial established the following facts.

Lupino and Wells, who both are members of the Omaha Tribe of Nebraska, lived together at the same residence on the Reservation ("the residence"). Their grandmother, their mothers, and Wells's girlfriend Sasha Miller also lived at the residence.

At night on September 25, 2000, Miller returned home with Wells after driving around the Reservation. Wells had been drinking alcohol while Miller drove the vehicle. After Miller parked the vehicle in the lot behind the residence, Lupino approached the vehicle and, at the invitation of Wells, began to drink alcohol with him. While they were drinking, Wells and Lupino engaged in a conversation which eventually led to an argument. Lupino ran away from the vehicle and disappeared from sight. Wells and Miller remained by the vehicle.

Lupino reappeared a few minutes later holding his left hand behind his back. Approaching Wells, Lupino said that he was not afraid of him and that he was "nobody's punk." Lupino then lunged at Wells with the object concealed in his left hand, which appeared to Miller to be a screwdriver, and stabbed Wells in the right side of his abdomen. Miller ran inside the residence, called the police, and told Wells's mother that Wells and Lupino were fighting and that Lupino may have stabbed Wells with a screwdriver. While Miller was inside the residence, Lupino continued to attack Wells, who was using his nylon jacket as a shield to fend off additional blows.

When Miller emerged from the residence, she saw Wells using his jacket to defend himself. Lupino ran away when a car drove in the direction of the men. After Lupino fled, Wells told Miller he had been stabbed. Wells showed Miller a dime-sized puncture wound in his lower right abdomen as well as a puncture hole and tear in his jacket. Miller helped Wells get to an ambulance, which rushed him to Mercy Medical Center, a trauma hospital in Sioux City, Iowa. At Mercy Medical Center, trauma surgeon Dr. William Rizk observed that Wells's abdomen was filled with blood, that his stab wound was four to five inches deep, and that the stabbing had punctured a hole through his intestine and torn an artery in his small bowel mesentery. Dr. Rizk performed emergency surgery on Wells to prevent him from dying from the internal bleeding.

After Wells was rushed away in the ambulance, Miller remained behind at the residence to assist the tribal police in their search for Lupino. For two hours that evening, the tribal police searched without success for Lupino and the weapon.

The following morning, tribal police officer Roberto Gorrin, who was alone and was not wearing a uniform, returned to the residence to continue the investigation. He learned that Lupino had never returned to the residence on the previous night. As Officer Gorrin was leaving the area, Lupino appeared from a

neighboring home and asked Officer Gorrin whether he was interested in buying some "smoke." Officer Gorrin interpreted the term "smoke" to mean marijuana. Officer Gorrin testified that he felt uncomfortable attempting to arrest an assault suspect without his weapon, handcuffs, or backup officers. He told Lupino that he was interested in buying marijuana and would be back later, and then returned to the police station without arresting Lupino.

Officer Gorrin returned with backup officers ten minutes later, but Lupino was no longer at the neighbor's home. When the officers went to a different neighbor's home to look for Lupino, Jamie Speelman answered the door. Speelman told the officers that Lupino was not present and that they would need a search warrant to look inside their house. However, Speelman subsequently opened the door and revealed that Lupino indeed was inside. The officers arrested Lupino immediately. Speelman testified that, on the morning of September 26, 2000, Lupino told her that he had stabbed Wells the night before with a knife that he had thrown away.

On June 21, 2001, the jury returned verdicts of guilty on both counts of the indictment against Lupino. On September 20, 2001, the district court sentenced Lupino to ninety-two months imprisonment and three years of supervised release. This appeal followed.

## II. Discussion

At trial, the government presented Officer Gorrin's testimony that Lupino had attempted to sell the officer marijuana on the day he was arrested. Prior to trial, the district court had denied Lupino's motion *in limine* to exclude that testimony on relevancy grounds. The district court also overruled Lupino's objections at trial that the testimony was irrelevant. Lupino did not ask the district court to give the jury a limiting instruction on the purpose of Officer Gorrin's testimony, and none was given. On appeal, Lupino argues that the district court erred by refusing to exclude

this evidence from trial. Lupino contends that Officer Gorrin's testimony had nothing to do with whether or not he actually had assaulted Wells. Lupino further argues that the district court's decision to admit this testimony unfairly prejudiced him by frustrating his sole defensive strategy (which was to remain silent and challenge the credibility of the government witnesses) by labeling him a drug dealer and calling his own credibility into question.

We review a district court's evidentiary decisions for an abuse of discretion. See United States v. Johnson, 169 F.3d 1092, 1097 (8th Cir.), cert. denied, 528 U.S. 857 (1999). Even where we find that the district court has abused its discretion with respect to an evidentiary ruling, we will not reverse the conviction if the error was harmless. See, e.g., United States v. Byler, 98 F.3d 391, 394 (8th Cir. 1996) (Byler) (affirming conviction after applying harmless error test). The test for harmless error is whether the erroneous evidentiary ruling "had a 'substantial influence' on the jury's verdict." Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995) (Peterson) (reviewing evidentiary ruling for harmless error). For the reasons discussed below, we affirm the decision of the district court.

## A. *Rule 401 of the Federal Rules of Evidence*

Lupino first challenges the relevancy of Officer Gorrin's testimony. We conclude that the district court did not abuse its discretion by denying Lupino's motion *in limine* and overruling his objections to Officer Gorrin's testimony on grounds of relevance. A piece of evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without that evidence." Fed. R. Evid. 401.

Officer Gorrin's testimony provided the factual context for Lupino's investigation and arrest. See United States v. Harris, 956 F.2d 177, 179 (8th Cir.), cert. denied, 506 U.S. 827 (1992) ("[A]lthough references to other crimes generally are inadmissible, the prosecution is entitled to explain the circumstances surrounding

the investigation and arrest of a defendant."); see also United States v. Summers, 137 F.3d 597, 601 (8th Cir. 1998) (explaining that evidence of factual setting of crime is relevant). In his testimony, Officer Gorrin explained that (1) he learned that morning that Lupino had not returned to the residence, (2) Lupino must have been watching the front door of the residence because he emerged from hiding to speak to the plain-clothed Officer Gorrin just as Officer Gorrin was walking away, (3) Lupino had changed hiding places in the ten minutes between the time that Officer Gorrin left and the time that he returned with other officers, and (4) Speelman and her brother were hiding Lupino in their home. This evidence tended to make it more probable that Lupino intentionally was hiding from the police and, therefore, that he was cognizant of his guilt. See United States v. Barnes, 140 F.3d 737, 738 (8th Cir. 1998) (per curiam) ("Evidence of flight or guilt is admissible and has probative value as evidence of consciousness of guilt.").

Although Officer Gorrin's testimony touched on irrelevant information about Lupino's lifestyle by suggesting that he was a drug dealer, the testimony itself was nonetheless relevant pursuant to Rule 401 of the Federal Rules of Evidence.

## B. Rule 403 of the Federal Rules of Evidence

We next turn to the question of whether the admission of Officer Gorrin's testimony should have been excluded under Rule 403 of the Federal Rules of Evidence. Rule 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ." Fed. R. Evid. 403. We give great deference to a district court's application of the Rule 403 balancing test. See United States v. Claxton, 276 F.3d 420, 422-23 (8th Cir. 2002).

We have concluded already that the conversation between Officer Gorrin and Lupino, in which Lupino offered to sell drugs on the morning of his arrest, had probative value because it provided the factual setting for the arrest and it made more

probable the fact that Lupino was cognizant of his guilt.  However, we hold that the testimony as it was presented unnecessarily created a risk of unfair prejudice that outweighed its probative value; therefore, the district court abused its discretion by admitting this testimony into evidence.

"'Unfair prejudice' . . .  means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  See Fed. R. Evid. 403 advisory committee's note.  Here, the depiction of Lupino as a drug dealer created the risk that the jury would assume that Lupino was someone with a propensity for criminal behavior.  At the very least, the testimony created the danger that the jury would draw an unfavorable conclusion about Lupino's character based solely on his association with drugs.  Even if it was necessary to show that Officer Gorrin had a conversation with Lupino on the morning of his arrest, we can conceive of no proper reason why the jury needed to know that the conversation involved drug dealing.  By disclosing the content of the conversation, the government risked creating an undue tendency for the jury to reach a decision on an improper basis.  Nevertheless, because there was abundant evidence to sustain Lupino's conviction without the evidence which marked the defendant as a drug dealer, we doubt that the testimony "had a 'substantial influence' on the jury's verdict."  Peterson, 60 F.3d at 475.

There was no dispute that Wells had been assaulted by someone with a weapon and that he had been seriously injured.  The government presented evidence at trial which identified Lupino as the assailant, including (1) the testimony of Wells, who lived with Lupino, knew him quite well, and identified Lupino as the person who assaulted him; (2) the testimony of Miller, who also lived with Lupino, knew him quite well, and saw Lupino attack Wells; and (3) the testimony of Speelman, who gave Lupino a place to hide from the police and said that Lupino had confessed the assault to her.  Assuming, *arguendo,* that the jury believed that Lupino was a drug dealer, such a belief would not make the other evidence of his guilt  more credible or

less credible. The potentially prejudicial testimony did not affect Lupino's own credibility because he did not testify and, therefore, his credibility was never at issue. The government did not argue that there was any connection between Lupino's drug dealing and the assault, and neither Wells's nor Miller's testimony was premised on the belief that Lupino was a drug dealer. Moreover, whether or not Lupino dealt drugs had no bearing on the nature of Wells's injury, which was undeniable. Thus, even if the jury disliked Lupino because of Officer Gorrin's testimony, it is doubtful that the jury reached its verdict on that basis and not on the basis of the other overwhelming evidence of his guilt.

For the foregoing reasons, we hold that, while the district court abused its discretion by admitting into evidence testimony that was potentially unfairly prejudicial, the error was harmless.[1] See Byler, 98 F.3d at 394 ("If the court finds that no substantial rights of the defendant were affected, and that the error had no, or only slight, influence on the verdict, then the error was harmless.").

III. Conclusion

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[1]We affirm the judgment of the district court with the knowledge that, although the testimony about Lupino's drug solicitation arguably created the danger of unfair prejudice, it does not appear that its admission affected the outcome of the verdict. The government would be wise, however, to ensure that it does not take such a risk in the future.