

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-18-2007

# USA v. Ali

Precedential or Non-Precedential: Precedential

Docket No. 05-4375

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Ali" (2007). *2007 Decisions.* Paper 657.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/657

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-4375

UNITED STATES OF AMERICA

v.

SHAMSUD-DIN ALI,

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 04-cr-0611-1
(Honorable Bruce W. Kauffman)

Argued April 23, 2007
Before:  SCIRICA, *Chief Judge*, FUENTES
and ALARCÓN[*], *Circuit Judges*.

---

[*]The Honorable Arthur L. Alarcón, United States Circuit
Judge for the Ninth Judicial Circuit, sitting by designation.

(Filed July 18, 2007)

JAMES J. BINNS, ESQUIRE (ARGUED)
925 Harvest Drive, Suite 300
Blue Bell, Pennsylvania 19422

THOMAS D. SCHNEIDER, ESQUIRE
55 Green Valley Road
Wallingford, Pennsylvania 19086
        Attorneys for Appellant

FRANK A. LABOR III, ESQUIRE (ARGUED)
ZANE D. MEMEGER, ESQUIRE
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106
        Attorneys for Appellee

---

OPINION OF THE COURT

---

SCIRICA, *Chief Judge*.

At issue in this fraud and racketeering case is whether the District Court erred by allowing a jury to hear evidence about a criminal defendant's contact with drug dealers even though the defendant was not charged with a drug offense. The District

2

Court evaluated the prejudicial impact of the evidence by balancing it against its probative value, as required by Fed. R. Evid. 403. We will affirm.

## I.

Shamsud-Din Ali was indicted on charges he directed and managed a racketeering enterprise in violation of 18 U.S.C. § 1962(c). Also part of the enterprise were his wife, Faridah Ali, who is not a party to this appeal; the Sister Clara Muhammad School, which the Alis controlled and operated; Keystone Information and Financial Services, Inc., a Pennsylvania corporation owned in part by the Alis and controlled by them; Hi-Technology Recycling Waste Management, Inc., a Pennsylvania corporation that employed Ali; and several other individuals.

The indictment alleged Ali, who was Imam at the Philadelphia Masjid, used the racketeering enterprise to obtain money and property through fraud and extortion, and to receive and use illegally obtained money to benefit the enterprise and himself. The indictment alleged Ali, among other activities, used actual and perceived political influence with high-ranking city officials to support the racketeering enterprise.

The indictment alleged twelve Racketeering Acts by Ali. Racketeering Act 1 involved a scheme to defraud the City of Philadelphia in its collection of delinquent property taxes. Acts 2 and 3 involved commercial bribery of a telecommunications executive in order to gain minority-owned business participation

3

for Ali's company in a venture at the Philadelphia International Airport. Act 4 involved submission of false tax returns to fraudulently obtain a line of credit. Acts 5 and 6 involved extortion and attempted extortion of two waste haulers contracting with the City of Philadelphia. Acts 7–10 involved mail fraud in a scheme by Ali to divert donations to the Sister Clara Muhammad School for his personal use. Act 11 alleged the fraudulent collection of rents from the Community College of Philadelphia, supposedly for adult education classes at the Sister Clara Muhammad School. Act 12 involved wire fraud in faxing a proof of insurance card in a scheme to obtain a Mercedes-Benz automobile based on false financial information.

According to Count One of the indictment, Ali received "cash payments obtained from individuals who were engaged in the illegal distribution of controlled substances." Ali also "used [Sister Clara Muhammad School] to disguise and conceal the receipt of cash for the use and benefit of the Enterprise, including the collection of proceeds from drug traffickers."

At the start of trial, Ali filed a motion in limine seeking to exclude evidence relating to his alleged association with drug dealers, arguing irrelevance because none of the indictment's racketeering acts was related to drug trafficking. Furthermore, Ali contended the evidence of contact with drug dealers would unduly prejudice the jury.

At a hearing on Ali's in limine motion, the government contended the evidence—proposed testimony from two witnesses and recordings of intercepted telephone

4

conversations—was relevant to show the nature and existence of the enterprise, and the purpose and structure of the enterprise, with Ali at its head.

The District Court sought to have the parties agree on a stipulation, omitting any reference to drugs, but which would nevertheless characterize the source of the funds received from drug dealers as illegal. Both sides demurred, the government contending the evidence would demonstrate that Ali's RICO activities included swindling drug dealers out of their money, and demonstrating drug dealers' recognition of Ali's power and position in the RICO enterprise and his perceived ability to provide them with some protection. For his part, Ali rejected the proposition that the stipulation could avoid potential prejudice.

The District Court denied the motion in limine after weighing the risk of unfair prejudice to the defendants against what it found was the substantial probative value of this evidence, and the fact that the evidence was necessary for the Government to show one of the essential elements of its primary RICO enterprise charge. The District Court found that the source of funding for the enterprise was integral to the government's case, and that the probative value of the evidence far outweighed the risk of unfair prejudice to the defendant. Further, the judge stated he was confident that any unfair prejudice could be avoided through the use of limiting instructions.

Before the presentation of evidence, the District Court

gave the jury a limiting instruction, emphasizing that Ali was not charged with a drug offense, and that the limited purpose for which the drug-related evidence could be evaluated was only as it related to conducting the affairs of the alleged illegal RICO enterprise.

The drug-related evidence came from several sources:

(1) an FBI special agent who testified he was part of a drug investigations squad, was monitoring a wiretap as part of a drug investigation, and was already familiar with Ali's voice from prior investigations;

(2) an IRS special agent who investigated tax and money laundering violations, and who testified that cash deposits of $350,000 made by Faridah Ali from 1998–2001 came from a source other than the Sister Clara Muhammad School;

(3) convicted drug dealer Rodney Saunders, who testified Ali and other Sister Clara Muhammad School employees knew he was a drug dealer, that they solicited donations to the school from him, and that on one occasion he gave Ali money to pay off a cocaine debt he owed to a jailed cousin;[1]

(4) tapes of conversations between Ali and drug dealers in which Ali told the drug dealers he or others needed money;

(5) convicted drug dealer Leonard Wideman, who

---

[1] Saunders also testified that when he gave the money to Ali, Ali put a finger to his lips and said "shh."

6

cooperated with the government by wearing a wire, and testified he paid Ali for protection at a time when Wideman was selling sham chemicals to other drug dealers.

At trial, the government presented substantial evidence of the RICO enterprise describing the following schemes:

(1) a scheme to defraud the City of Philadelphia by (a) obtaining a tax collection contract with the city law department for Keystone Information and Financial Services through false and fraudulent misrepresentations, and (b) obtaining a $60,595 commission for Keystone Information and Financial Services by converting a delinquent taxpayer's attempt to pay delinquent real estate taxes into a personal windfall;

(2) a commercial bribery scheme in which Ali paid kickbacks to AAT Communications Corporation, a communications company that listed Ali's Keystone Information and Financial Services as a minority-owned business participant, even though Keystone did not do any work other than seeking, with AAT Communications Corporation, other commissions without providing any actual services;

(3) a scheme to defraud Commerce Bank by submitting false financial information to the bank in order to induce it to extend the maturity of a $100,000 debt owed by Keystone Information and Financial Services, the purpose being to maintain the false appearance that the company was a viable entity;

(4) a scheme to defraud individuals, labor unions and

7

other entities by inducing contributions to the Sister Clara Muhammad School, representing to donors that these funds would be used exclusively to benefit the school, when they were instead used for the Alis' personal expenses;

(5) a scheme to defraud the Community College of Philadelphia by obtaining hundreds of thousands of dollars in rents and salaries for adult education courses that never took place;

(6) two schemes to extort private companies seeking waste management contracts with the City of Philadelphia, using the perception that Ali had political influence with high-ranking city officials.

Ali moved for acquittal following conclusion of the prosecution's case, contending the government had failed to prove the existence of an enterprise or pattern of racketeering activity. This motion was denied.

The jury deliberated for a week before issuing a special verdict convicting Ali on twenty-two counts of the indictment. The jury found seven of the Racketeering Acts were proven (Racketeering Acts 1-6 and 11). But Racketeering Acts 7–10 were not proven, and the jury was deadlocked on Racketeering Act 12. Also, Ali was acquitted on four mail fraud counts and the jury was deadlocked on seven wire fraud counts. Ali renewed his motion for judgment of acquittal after his conviction, but this, too, was denied.

Ali filed a post-trial motion for a new trial on the ground

8

he was prejudiced by the inclusion of references to drug dealing during the trial. The District Court denied this motion, noting the evidence demonstrated that money solicited from drug dealers was filtered through the Sister Clara Muhammad School to be used for the Alis' benefit, which helped to prove the means of the enterprise and Ali's knowing participation in it. The District Court referenced its use of limiting instructions, and posited that Ali's contention that the drug references resulted in undue prejudice was undermined by the jury's acquittal of Ali on some counts and failure to reach a verdict on others. Furthermore, the District Court noted, the verdicts were amply supported by the evidence.

Ali was sentenced to 87 months' imprisonment on the RICO, bank fraud and extortion violations, and to a concurrent 60 months for mail fraud, conspiracy to commit mail fraud, interstate travel in aid of racketeering and tax violations. Ali also received five years of supervised release, a restitution charge of $365,440, and a $2600 special assessment.

Ali filed a timely notice of appeal.

## II.

Ali was indicted for alleged violations of 18 U.S.C. § 1962 (RICO), 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud) and other federal criminal statutes. The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 1291.

We review a ruling under Fed. R. Evid. 403 for abuse of

9

discretion. *United States v. Eufrasio*, 935 F.2d 553, 571 (3d Cir. 1991). A trial judge is given "very substantial discretion" in making a Fed. R. Evid. 403 balancing of probative value against potential unfair prejudice. *United States v. Long*, 574 F.2d 761, 767 (3d Cir. 1978).

## III.

"All relevant evidence is admissible, except as otherwise provided" by the Constitution, an act of Congress, rules prescribed by the Supreme Court or the Federal Rules of Evidence. Fed. R. Evid. 402. Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.

The government contended that shaking down drug dealers was one of the means of operation employed by the enterprise, and that these drug dealers were vulnerable because of Ali's perceived power in the enterprise and because of the illegal nature of their business. The District Court found this

10

evidence was necessary to establish Ali's participation in the alleged RICO enterprise; the continuous existence of the enterprise separate and apart from the criminal acts constituting racketeering activity; its purpose in generating income for the Alis from illegal activity; and its common means of operation to further this purpose.

We see no abuse of discretion. The court carefully examined the evidence for potential prejudice and balanced this against its probative value. After determining the evidence was relevant and its probative value outweighed its potential prejudicial impact, the District Court gave the jury a limiting instruction on the use of drug-related evidence. The court acted within the discretion afforded it by Fed. R. Evid. 403.[2]

---

[2] The 1972 Advisory Committee notes accompanying the rule offer a practical approach to identifying and deciding whether to admit potentially prejudicial evidence:

> "Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one . . . .
> In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction . . . . The availability of other means of proof may also be an appropriate factor.

Fed. R. Evid. 403 Advisory Committee's Notes.

11

The District Court's determinations were consistent with our decisions in two RICO cases where we affirmed convictions and found no abuse of discretion where district courts admitted potentially prejudicial evidence of uncharged criminal activity. *See Eufrasio*, 935 F.2d 553; *United States v. DiSalvo*, 34 F.3d 1204 (3d Cir. 1994).

In *Eufrasio*, three defendants were convicted in a racketeering case that included illegal gambling, collection of unlawful debts and attempted extortion. On appeal, the defendants contended the district court abused its discretion under Fed. R. Evid. 403 by failing to exclude evidence of "uncharged Mafia crimes undertaken during the Scarfo/Riccobene mob war, and of other heinous Mafia Crimes." *Eufrasio*, 935 F.2d at 571 n.22. We found no abuse of discretion under Fed. R. Evid. 403, and noted that the evidence of the uncharged crimes "went to prove important elements of the RICO counts charged," including the existence and nature of the RICO enterprise, acts taken in furtherance of it and the defendants knowing association with it. *Id.* at 573.

> The disputed evidence was probative of appellants' respective roles within the enterprise's larger organization, history and operations. Thus, the relevance of the uncharged crimes evidence to the government's case against appellants was substantial, certainly enough to offset its potential to cause prejudice for appellants.

*Id.*

12

In *DiSalvo*, a defendant charged with non-drug-related RICO violations appealed the introduction at trial of evidence of his relationship with a drug dealer. As in *Eufrasio*, we found no abuse of discretion because the evidence was "indicative of knowledge of the structure of the [RICO] enterprise." *DiSalvo*, 34 F.3d at 1221. The evidence was probative of "essential elements of the RICO charges and [was] also offered to show [defendant's] familiarity with the enterprise's illegal activities, the nature of his relationship with other conspirators and members of the RICO enterprise, and his knowledge of the violent nature of . . . the enterprise." *Id.*

The evidence challenged by Ali is in the same vein as the evidence we held properly admitted under Fed. R. Evid. 403 in *Eufrasio* and *DiSalvo*.[3]

---

[3] In support, Ali cites *United States v. Lupino*, 301 F.3d 642 (8th Cir. 2002), where a district court abused its discretion by admitting evidence of a conversation between an assault defendant and a police officer, where the conversation involved the defendant's offer to sell drugs to the police officer. *Lupino*, 301 F.3d at 646.

Ali contends that in his case, as in *Lupino*, the references to drugs in the evidence—despite the fact he was not charged with a drug offense—created an unfair prejudice that might lead the jury to believe he was involved in drug trafficking and that he therefore had a propensity for criminal behavior or that he had a bad character.

But in *Lupino*, the conversation about selling drugs was

13

The District Court thoroughly and carefully balanced the

not even tangentially connected to the assault charge against the defendant. Here, in contrast, the probative value of the evidence of Ali's contact with drug dealers and his receipt of money from them demonstrates how the enterprise operated and Ali's "seeming power to compel payments by others," specifically, from people Ali knew were involved in illegal activities. (Appellee's Br. 58.) The fact that Ali was not charged with a drug-related offense does not automatically negate the probative value of this evidence.

Furthermore, the *Lupino* court concluded that the admission of the evidence, albeit an abuse of the district court's discretion, was harmless error because it did not appear the evidence had a substantial impact on the jury's verdict. *Lupino*, 301 F.3d at 646. Here, the prosecution introduced dozens of witnesses, hundreds of transcribed phone conversations and other evidence to show Ali's guilt, separate from his receipt of money from drug dealers.

Though we do not see any error, in light of the overwhelming evidence presented at trial, any error would have been harmless. *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded"); *Long*, 574 F.2d at 772 ("The evidence of guilt in this particular case is so substantial that the legal error may be considered harmless"); *Govt. of Virgin Islands v. Toto*, 529 F.2d 278, 283–84 (3d Cir. 1976) (noting the test for harmless error is whether it is highly probable that evidentiary error did not contribute to conviction).

14

probative value and prejudicial impact of the evidence. Furthermore, the District Court's limiting instructions were proper.

IV.

We will affirm.