

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-12-2008

# USA v. Zomber

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1933

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation
"USA v. Zomber" (2008). *2008 Decisions.* Paper 243.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/243

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD DISTRICT

_____

Nos. 06-1287/2230/07-1933

_____

UNITED STATES OF AMERICA

v.

MICHAEL ZOMBER,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cr-046-2)
District Judge: Honorable Cynthia M. Rufe

_____

Argued July 21, 2008

Before:  McKEE, FUENTES, and JORDAN, *Circuit Judges*

_____

(Filed: November 12, 2008)

_____

Gerald B. Lefcourt   [ARGUED]
Renato C. Stabile
Gerald B. Lefcourt, P.C.
148 E. 78th Street
New York, NY 10021
        *Counsel for Appellant*

Patrick L. Meehan
Robert A. Zauzmer
Seth Weber
Joseph F. Minni   [ARGUED]
United States Attorney's Office
615 Chestnut Street - #1250
Philadelphia, PA   19106

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

In this combined direct appeal and collateral proceeding, Michael Zomber challenges his conviction for conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. § 371.  On direct appeal, he maintains that his conviction and sentence should be vacated for six reasons: (1) the evidence at trial was insufficient to support his conviction; (2) he was denied his Sixth Amendment right to effective assistance of counsel; (3) the government improperly withheld evidence that should have been produced under the Jencks Act, 18 U.S.C. § 3500, and *Brady v. Maryland*, 373 U.S. 83 (1963); (4) he was prejudiced by the District Court's erroneous jury instruction on the meaning of fraud; (5) the District Court's calculation of his sentence under the United States Sentencing Guidelines was erroneous; and (6) the District Court erroneously ordered him to pay restitution for non-criminal transactions not charged in the indictment.  In his motion under 28 U.S.C. § 2255, Zomber argues that the judgment against him must be vacated due to the ineffective assistance of his counsel and the same *Brady* and Jencks Act violations he alleges in his direct appeal.  Because we conclude that the government

2

failed to produce evidence during Zomber's trial that it was required to produce under the Jencks Act, we will vacate Zomber's conviction and sentence and will remand the case for a new trial.

## I.  Background

Because we write primarily for the benefit of the parties, we set forth only those facts pertinent to the issues before us on appeal.  Zomber is an antique firearms dealer who, along with codefendant and fellow antique firearms dealer Richard Ellis, was indicted on January 23, 2003 for conspiracy to commit mail fraud and wire fraud.  The charges stemmed from three false and misleading letters written by, or at the direction of, Zomber and Ellis.  The letters were intended to induce Joseph Murphy, a collector of antique firearms made by the Samuel Colt Manufacturing Company, to purchase at inflated prices four Colt firearms secretly owned by Zomber and Ellis.[1]  While Ellis pled

---

[1]For example, Zomber admitted the following:
Q:     Richard Ellis asked you to write a false letter, making up a story that you had a buyer willing to pay money for [one of the firearms].
A:     He asked me to write a letter, yes.
Q:     And that letter stated that you were representing a buyer who was interested in purchasing the [firearm].
A:     Yes.
Q:     When, in fact, there was no such buyer, is that right?
A:     I had no knowledge of the buyer.
Q:     But when you say you had no knowledge of the buyer, I just want to be clear.  No such buyer existed.
A:     Not to my knowledge.
(App. at 544.)  Zomber also acknowledged that at one point he was concerned about "unconscionable markups of the prices" that Ellis charged Murphy for guns.  (App. at 142.)

guilty to the charge in the indictment, Zomber's case went to trial. At trial, Murphy was the government's primary witness, and he testified that he would not have paid what he did for the firearms had he known their true value. On December 15, 2003, a jury found Zomber guilty of one count of conspiracy to commit mail and wire fraud.

On March 23, 2004, Zomber filed a motion to vacate his conviction due to ineffective assistance of counsel and *Brady* violations. On February 28, 2005, the District Court denied his ineffective assistance of counsel claim without prejudice because such claims are typically reserved for collateral attack in a motion under 28 U.S.C. § 2255, rather than being permitted within the criminal case itself or on direct appeal. The District Court dismissed Zomber's other claims on the merits. Three months later, Zomber filed a second motion to vacate his conviction, in which he alleged an additional *Brady* violation by the government. The District Court also denied that motion.

On September 9, 2005, Zomber filed a third motion to vacate his conviction, alleging *Brady* and Jencks Act violations by the government for failure to disclose letters Murphy had written to billionaire Bill Gates (the "Gates letters") offering to sell his firearms collection "at cost with no traditional mark-up and no dealer commission."[2]

---

[2]While not entirely clear, the record indicates that the government had the Gates letters prior to trial. Zomber did not discover the existence of the letters until after trial. Only one of the letters, dated December 21, 2000, contains the offer to sell; the second letter, dated January 17, 2001, merely gives Murphy's contact information, which he had not provided in the first letter. Because the parties treat the Gates letters as a unit, making no legal distinction between them, we do so as well.

(App. at 172.) The District Court denied that motion from the bench in open court. The

Court sentenced Zomber to thirty months in prison, three years of supervised release, a

$75,000 fine, and a $100 special assessment, and it scheduled a hearing in accordance

with 18 U.S.C. § 3664(d)(5) to determine restitution.[3] Zomber then filed a timely notice

of appeal.

Shortly thereafter, Zomber launched his collateral attack with a motion to vacate,

set aside, or correct sentence pursuant to 28 U.S.C. § 2255, alleging, among other things,

that the government had committed *Brady* and Jencks Act violations prejudicial to his

defense.[4] In denying the motion, the District Court held that the government's failure to

produce the Gates letters did not violate the Jencks Act. It began its analysis of the

Jencks issue with the following view of the legal standard:

---

[3]On March 22, 2006, the District Court conducted an evidentiary hearing to determine restitution. At the hearing, Zomber and Ellis entered into a stipulation that the District Court could order restitution in the amount of $2.2 million, where Zomber and Ellis would each be liable for half, or $1.1 million. Because Ellis had already paid Murphy more than the restitution amount, pursuant to a civil settlement agreement between them, the Court did not order Ellis to pay restitution. While agreeing that the Court could order restitution against Zomber, his counsel objected to the figures adopted by the District Court in computing restitution. On March 27, 2006, the Court entered an amended criminal judgment that included a sentence of restitution in the amount of $1.1 million against Zomber. On March 31, 2006, Zomber filed a second notice of appeal, which included the restitution order. We entered an order on April 11, 2006, consolidating Zomber's appeals (06-1287/06-2230).

[4]On May 12, 2006, Zomber filed a motion with the Third Circuit to stay his appeals pending the District Court's resolution of his § 2255 motion, and we granted the motion to stay on June 13, 2006.

5

[Under the Jencks Act,] the government is required to 'produce any statement ... of [a] witness in the possession of the United States which relates to the subject matter as to which the witness has testified.' ... An examination of cases applying the Jencks Act reveals that it applies to statements given to or taken by government agents, or reports created by government agents, that directly relate to the witness's testimony at trial. ... There is no indication that the Jencks Act encompasses collateral statements made in a letter that is totally unrelated to the criminal investigation or the proffered content of the witness's eventual testimony.

*Zomber v. United States*, No. 03-46-2, 2007 WL 853803, at *17 (E.D. Pa. 2007). The

Court then described why the Jencks Act had not been violated in Zomber's case:

Petitioner has not cited a single case in which the Jencks Act was found to apply to tangential letters or other documents that were not sent to or provided to an investigating officer, agent, or prosecutor. The Jencks Act was enacted to deal specifically with actual statements given to government officials by potential witnesses. For example, if Murphy had met with investigating agents or government prosecutors and made a statement about the value of his firearms collection, the Jencks Act would require the government to disclose that statement to defense counsel. Similarly, if Murphy had written a letter to ... one of the F.B.I. agents investigating the conspiracy [,] in which he made a statement concerning the value of his collection, the Jencks Act would likely require disclosure of that letter. ... The Jencks Act does not, however, require disclosure of a letter, unrelated to the criminal investigation or prosecution, sent to an uninterested third party. The Court does not believe that an offer for sale included in a letter to a third party, wholly unrelated to the government's investigation, constitutes a "statement" under 18 U.S.C. § 3500.

*Id.* at *18.

In addition to denying all of the claims in Zomber's § 2255 motion, the District

Court declined to issue him a certificate of appealability because it held that he had failed

to make a substantial showing that any of his constitutional rights had been violated. *Id.*

6

at *19.  Zomber appealed the denial of his motion.  On October 29, 2007, we issued an order granting his motion for a certificate of appealability and consolidated the appeal on his § 2255 motion with his direct appeal.[5]

## II.  Discussion[6]

Zomber advances a number of arguments for overturning his conviction and sentence.  One is dispositive.  He argues that his conviction should be vacated because, during the trial, the government withheld the Gates letters, which should have been produced under the Jencks Act and which could have been used to impeach Murphy's testimony.

The Jencks Act requires that "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement ... of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified."  18 U.S.C.A. § 3500(b).  It goes on to define a "statement" to include "a written statement made by said witness and signed or otherwise adopted or approved by him ... ."  18

---

[5]As noted herein, *infra* at n.10, it would have been better if the § 2255 motion had been denied without prejudice at the outset, but we are where we are, and our treatment of the issues on direct appeal is unaffected by the existence of the § 2255 motion, except that the District Court explicated its reasoning more fully in the context of ruling on that motion.

[6]The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  "We review the district court's denial of defendant's motion for a mistrial based on a claim of Jencks error under an abuse of discretion standard."  *United States v. Hill*, 976 F.2d 132, 139 (3d Cir. 1992).

U.S.C.A. § 3500(e)(1). Zomber argues that the Gates letters are obviously Murphy's own written statements and are related to the subject matter of Murphy's trial testimony. As such, Zomber reasons, they should have been produced by the government no later than after Murphy's direct testimony.

The District Court, however, held that the Gates letters are not Jencks material for two reasons. First, the Court effectively read into the statute an additional restriction on the definition of "statement," namely that to be a "statement" the information at issue must have been provided directly to someone in law enforcement. In the Court's words, the letters are not subject to the Jencks Act because they "were not sent to or provided to an investigating officer, agent, or prosecutor." *Zomber*, 2007 WL 853803, at *18. The District Court's second reason for holding that the Gates letters are not covered by the Act is that they are "unrelated to the criminal investigation or prosecution." *Id*. We cannot agree with either of those conclusions.

As to the first, it reflects an inaccurate reading of the Jencks Act, as even the government acknowledges. (Appellee's Br. at 54.) Nothing in the statute distinguishes statements made to a government agent from statements made to anyone else. It does not matter to whom the statement is made. What matters is that the statement relates to the witness's testimony and is in the possession of the government. *See Goldberg v. United States*, 425 U.S. 94, 103 (1976) (The Act "requires production of 'any statement ... of the

8

witness in the possession of the United States' without any limitation to statements made 'to an agent of the Government.'").

The second reason given by the District Court, that the letters do not relate to the subject matter of Murphy's testimony, is flawed as a matter of fact and law. It is clearly erroneous as a factual matter because the letters solicit negotiations for the sale of the very firearms at issue in this case, albeit as part of a larger set of Colt firearms, and they reveal Murphy's assessment of the value of those firearms. Since Murphy testified in essence that the firearms were not worth the price that he paid for them, and since the letters show that he was interested in selling the firearms for that same price, we are persuaded that the letters are, as a matter of common parlance and within the meaning of the Jencks Act, "related" to the testimony Murphy gave at trial.

Given, then, that the Gates letters are Murphy's own written statements, that they relate to Murphy's testimony as to the value of the firearms, and that they were in the possession of the government prior to trial, they were subject to disclosure under the Jencks Act. The District Court's conclusion to the contrary is an error of law and, therefore, constitutes – in the infelicitous phrase we are required to use – an abuse of discretion. *See LaSalle Nat'l Bank v. First Conn. Holding Gr., LLC*, 287 F.3d 279, 288 (3d Cir. 2002) ("An abuse of discretion occurs when the court bases its opinion on ... an erroneous legal conclusion, or an improper application of law to fact.").

Having determined that a Jencks Act violation occurred, we must review the record to determine whether the District Court's error in countenancing it was harmless. *Hill*, 976 F.2d at 141. The test for harmless error is whether it is highly probable that the error did not contribute to conviction. *United States v. Ali*, 493 F.3d 387, 392 n.3 (3d Cir. 2007). Specifically in the context of the Jencks Act, "we must analyze the prejudice resulting from the nondisclosure of the [evidence] in terms of its potential usefulness to the defense ... ." *Hill*, 976 F.2d at 141.

We conclude that the error resulting from the government's withholding was not harmless in this case. Murphy was the government's main witness and testified at length about how he was defrauded by Zomber and Ellis. Much of his testimony dealt with the value of the firearms. Indeed, a central premise of the prosecution is that Zomber and Ellis persuaded Murphy to pay a price vastly above the true market value of the guns.[7] Since Murphy would presumably be reluctant to visit on someone else the crime he allegedly suffered, his offer in the Gates letters to sell the same firearms "at cost," or, in other words, at the price he paid, could certainly be viewed as contradicting the premise that he paid more for the firearms than they were worth.

---

[7]Although Zomber argues that it is impossible to assign a market value to something as subjectively desirable as an antique, there was expert testimony at trial that a rational jury could accept as establishing that there is a market for antique guns and that the guns had a discernable fair value in that market.

10

In the context of addressing Zomber's *Brady* arguments,[8] the District Court considered whether the government's withholding of the Gates letters caused Zomber any prejudice. The Court held that it did not. Its first reason for that holding was that "[t]he value of the letters is questionable. While Murphy offers to sell his collection at cost, nowhere does he promise that the collection is worth what he paid for it, nor does he suggest that he has an alternative buyer who is ready and willing to pay cost for the collection." *Zomber*, 2007 WL 853803 at *17. Second, the Court said, "[g]iven the quality of Murphy's testimony on direct and cross-examination – as [defense counsel] described him, he was a 'tough witness,' a 'very good witness,' a 'very sympathetic witness,' and a 'very formidable witness,'– the letters would have done very little to impeach his extensive testimony." *Id*.

We cannot agree with that analysis. It is true that Murphy did not expressly state in the Gates letters that the collection is worth what he paid for it, but that message about the value of the firearms is one fair inference from the letters and, given the legal standard we must apply, one fair inference is enough. Furthermore, it seems circular to say that the significance of impeachment evidence should be judged in light of the strength of testimony that was not subject to the impeachment evidence. Murphy may well have

_____

[8]We recognize that our harmless error analysis also speaks indirectly to Zomber's *Brady* argument with respect to the Gates letters. However, we need not rule on that *Brady* issue because the Jencks question is dispositive.

been a "very good witness," but the jury should have been the one to decide whether he remained credible after being asked about the Gates letters.

In short, while the District Court thought that "use of the letters on cross-examination may have made a very minor impact on Murphy's well-established credibility[,]" *id*., we think it no stretch to believe that a cross-examination of Murphy with the benefit of the Gates letters may have seeded reasonable doubt in the minds of one or more jurors about the alleged conspiracy to defraud Murphy. A juror may have been left with a reasonable doubt about Murphy's truthfulness in general, which could have impacted the jury's willingness to credit his testimony and, by extension, the government's theory of the case. More narrowly, a reasonable juror, viewing the Gates letter, may have had a reasonable doubt about the actual value of the firearms. Murphy had a sufficient history as a collector, that his own opinion about the value of the firearms may have carried some weight with the jury. We do not suggest that these are necessary outcomes of the Gates letters being available for use by the defense, only that they are potential outcomes sufficient to constitute prejudice to Zomber. Thus, withholding the evidence caused real prejudice, and we cannot say that it is highly probable the error represented by that prejudice did not contribute to Zomber's conviction.

## III.     Conclusion

Accordingly, we will vacate Zomber's conviction and sentence, and remand the case to the District Court for a new trial consistent with this opinion.[9] We will also vacate the District Court's order denying Zomber's § 2255 motion, and remand with instructions to dismiss the § 2255 motion without prejudice.[10]

---

[9]Because Zomber will have the opportunity for a new trial, during which he will have access to the Gates letters and other information that he argues he should have had before the first trial, his additional allegations of *Brady* violations and ineffective assistance of counsel are moot. We find no merit in his remaining arguments on direct appeal regarding erroneous jury instructions, insufficient evidence to support the conviction, improper Guidelines calculations, and erroneous calculation of restitution.

[10]Because Zomber's direct appeal was pending when he filed his § 2255 motion, the District Court should have dismissed it without prejudice. See Kapral v. United States, 166 F.3d 565, 570 (3d Cir. 1999) (stating that a collateral attack is not appropriate while a direct appeal is pending). We acknowledge that our earlier decision to stay the direct appeals while the District Court adjudicated the § 2255 motion was perhaps not the most efficient course of action, and we regret that it may have misled the District Court into believing that it should adjudicate the § 2255 motion. Regardless, the proper course of action now is for the District Court to vacate its decision denying the § 2255 motion and dismiss it without prejudice.