

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-16-2009

# USA v. Pratt

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4401

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Pratt" (2009). *2009 Decisions.* Paper 1534.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1534

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 07-4401

———

UNITED STATES OF AMERICA

v.

TYRONE PRATT a/k/a/ TYRONE DANA BOOKER

Tyrone D. Pratt,
Appellant

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 1-06-cr-00077)
District Judge: Honorable Gustave Diamond

———

Submitted Under Third Circuit LAR 34.1(a)
January 13, 2009

Before: SLOVITER and BARRY, Circuit Judges, and POLLAK,[*] District Judge

(Filed: April 16, 2009)

———

OPINION

———

[*] Hon. Louis H. Pollak, Senior Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

POLLAK, <u>District Judge</u>.

Appellant Tyrone Pratt, following a jury trial, was convicted of illegally possessing a firearm. Pratt challenges the sufficiency of the evidence underlying that conviction and the admission of evidence at the trial that the firearm in question had been stolen. He also challenges the sentence imposed by the district court. We reject Pratt's arguments and affirm the District Court's judgment.

**I.**

The jury heard evidence that on July 30, 2005, at around 1:30 a.m., Pittsburgh police officers Philip Mercurio and Robert Kavals were patrolling a high-crime area in the Homewood neighborhood of Pittsburgh in an unmarked police car.[1] Pratt was driving the car directly in front of the officers' car, and they observed him make a left turn at a red light without stopping. Officer Mercurio, who was driving, continued behind Pratt and turned on the car's warning lights and siren, signaling for Pratt to pull over. Pratt did not pull over, and Officer Kavals radioed for backup. Pratt turned right into a parking lot, went across the lot, and pulled back out onto the street, at which point he went through another red light and then stopped. Pratt got out of his car, dropping a cell phone as he did so, fell down, picked up the phone, and fled on foot. The officers pursued Pratt (Mercurio on foot and Kavals by car). During his flight, Pratt jumped over a fence and

---

[1]Two people from the television show COPS accompanied the police officers with video cameras. Before Pratt's trial, a subpoena was issued to the producers of COPS requesting any audio or video recordings of the event, but they reported back that because no footage had been incorporated into any episodes of COPS, any tapes that existed had been erased.

fell down, but he got back up and kept running until he ran into Officer Kavals, who, having circled around by car, got out and tackled Pratt.

Pratt was handcuffed, arrested, and searched. He was found to be wearing an empty sidekick holster. The officers returned to Pratt's car, but no gun was there. The police officers retraced the path of the chase and found a .45 Para-Ordnance gun lying next to the fence Pratt had vaulted. The gun fit the holster Pratt was wearing. Because Pratt had previously been convicted of a felony, he was charged with violating 18 U.S.C. § 922(g)(1), which prohibits the possession of a firearm by a prior felon.

At Pratt's trial, the government sought to introduce evidence that the gun found by the fence had been stolen. The District Court initially barred the introduction of this evidence as overly prejudicial, but later permitted the government to introduce evidence from the owner of the gun regarding its theft so long as the evidence would show that the holster found on Pratt was at least similar to the one belonging to the gun that was stolen. The government then presented Jeremiah Thomas, who testified that he had purchased a .45 Para-Ordnance pistol on June 12, 2005 and reported it stolen on July 26, 2005. He did not report the holster missing or stolen at the time, but he did testify at trial that there was a holster with the gun when it was stolen, and the holster found on Pratt looked like the holster that went with his stolen gun.

The defense presented one witness, Dyan Carmack, who testified that she had in fact dropped the gun the police found. Carmack testified that she was carrying the gun

3

for a man named John Bundy; he asked her to carry it when he was going to a bar with a metal detector that would not have permitted the gun. Carmack was then on her way to meet Bundy after he left the bar so she could return the gun. She testified that as she was walking, she saw the police pursuing someone, so she discarded the gun because she knew that she did not have a permit to lawfully carry it. Carmack testified that she did not know Pratt, but did know his cousin, who told Carmack about Pratt after Carmack told her about the discarded gun. Carmack testified that she came forward of her own free will, did not have immunity to safeguard her from prosecution for illegal possession of the gun, and was not subpoenaed to testify. Carmack also testified that she had become friends with Pratt and visited him approximately thirty times at the County Jail.

The jury convicted Pratt, and the District Court later sentenced him to a period of imprisonment of 200 months followed by a term of supervised release.

## II.

On appeal, Pratt raises three issues. First, he challenges the sufficiency of the evidence on which he was convicted. Second, he appeals the District Court's ruling under Fed. R. Evid. 401 and 403 permitting evidence that the gun was stolen. Third, he challenges his sentence, arguing that the District Court failed to properly consider the nature and circumstances of the offense.

**A.**

Pratt argues that the evidence was not sufficient to sustain his conviction because the government failed to prove that he possessed the gun found by the fence. "Our review of the sufficiency of the evidence after a conviction is 'highly deferential.'" *United States v. Hart*, 273 F.3d 363, 371 (3d Cir. 2001). We have plenary power to determine, after drawing all reasonable inferences in the light most favorable to the government, whether the evidence would allow a rational jury to convict. *See id.* The jury's verdict must be upheld if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (citations omitted).

In order to establish a violation of 18 U.S.C. § 922(g)(1), the government must prove that (1) a defendant had previously been convicted of a crime punishable by imprisonment for a term exceeding one year; (2) a defendant knowingly possessed a firearm; and (3) that the firearm had passed in interstate commerce. *See United States v. Dodd*, 225 F.3d 340, 344 (3d Cir. 2000). At Pratt's trial, he stipulated to the first and third elements. He argues that there was not substantial evidence supporting the jury's conclusion that he possessed the gun, because the only piece of evidence connecting him to the gun was the testimony that the gun was found in the same location where he fell while jumping the fence. However, the government was entitled to prove the second element by proving constructive possession, which "requires an individual to have the

power and intent to exercise both dominion and control over the object he or she is charged with possessing." *United States v. Garth*, 188 F.3d 99, 112 (3d Cir. 1999).

Viewing the evidence in the light most favorable to the government, *United States v. Wise*, 515 F.3d 207, 214 (3d Cir. 2008), the jury could have reasonably concluded that appellant exercised "dominion and control" over the gun. The gun was found on the ground next to the location where Pratt had fallen down while trying to jump over a fence. When he was arrested, Pratt was wearing an empty holster, and the gun that was found fit inside that holster. Appellant points to the testimony of Dyan Carmack regarding the presence of the gun in that location. However, it was solely within the province of the jury to evaluate Carmack's testimony and decide whether to believe her explanation. *Dent*, 149 F.3d at 187. The jury evidently rejected this testimony, and we do not pass on the jury's credibility determinations. Based on the evidence presented, the jury could have reasonably believed the government's theory that Pratt had the gun on his person when he began his flight from the police and dropped the gun in that location when he fell. The evidence is sufficient to sustain Pratt's conviction.

**B.**

Pratt's second argument is that the admission of evidence that the gun and the holster were stolen violated Federal Rules of Evidence 401 and 403, because the evidence was irrelevant and unduly prejudicial.[2]

---

[2]Pratt contends that this purported error was of particular consequence because the jury received no limiting instruction. However, the record reveals that no limiting instruction on this

6

Evidence is relevant where it "make[s] the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," but relevant evidence may still be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 401, 403.

The transcript provides the District Court's rationale for the admission of the testimony that the gun and holster were stolen:

> ". . . it becomes relevant because the holster was found on the defendant and it would be an unusual coincidence if the two of them were not part of the same package, and the witness now would be testifying that the holster came from his collection and, therefore, the defendant, it's more likely than not that the defendant did, in fact, possess the weapon which came with the holster. I'll permit that. But absent that kind of a tie-in, simply the fact that the weapon that the defendant allegedly possessed was stolen, I won't permit that because the relevance is minimal and its potential for a prejudice is disproportionately high. . . ."

App'x at 166-67. Jeremiah Thomas then testified that the holster found Pratt was "the same one, pretty much the same one" that had been stolen from him. App'x at 178.

We review this ruling for an abuse of discretion and conclude that no such abuse occurred here. *United States v. Eufrasio*, 935 F.2d 553, 571 (3d Cir. 1991). The fact that a witness could identify the empty holster found on Pratt as being a holster that was compatible with the gun found on the ground made it more probable that Pratt possessed the gun, and therefore the evidence that the gun and holster had been stolen together was

issue was requested.

7

relevant. This evidence may indeed have been damaging to Pratt, because the jury may have connected the theft with Pratt and conflated the crime of theft with the crime with which Pratt was charged. However, it was not an abuse of discretion to conclude that the evidence was not unduly prejudicial; the District Court's reasoning regarding the additional relevance created by tying the stolen gun to the identification of the holster was neither arbitrary nor irrational. The District Court "carefully examined the evidence for potential prejudice and balanced this against its probative value." *United States v. Ali*, 493 F.3d 387, 391 (3d Cir. 2007); *see also Eufrasio*, 935 F.2d at 573 (encouraging district courts to provide express reasoning when conducting a Rule 403 balancing analysis).

## C.

Finally, Pratt challenges his sentence, arguing that the District Court committed procedural error. The District Court sentenced Pratt to 200 months, below the advisory guideline range of 252-293 months but above the mandatory minimum of 180 months. Pratt argues that the District Court committed error by not considering Pratt's request for a variance under § 3553(a) down to the mandatory minimum sentence.

Pratt argues that the District Court neglected to follow *Gall v. United States*, 128 S. Ct. 586 (2007), by failing to consider his arguments in support of his request for a variance, which focused on the nature of the offense, particularly that the gun was not found on his person and that he did not use or brandish the gun.

The District Court concluded that even the lower end of the guidelines range

8

would be "excessive" in this case but also that the mandatory minimum of 180 months did "not adequately reflect the fact that [Pratt] engaged in activities that made him under our law an armed career criminal." App'x 300. The District Court found that it would be proper to impose a sentence somewhere between the mandatory minimum and the guidelines' lower end. The District Court considered Pratt's arguments regarding the § 3553(a) factors and commented on those factors in imposing sentence, including the factor requiring consideration of the nature of the offense. Although Pratt's counsel was correct in pointing out that Pratt did not use or brandish the gun, this argument was made in the context of counsel's argument that the guidelines range was excessive, an argument with which the District Court agreed. Pratt's arguments on this appeal regarding the nature of the offense are premised on a contention rejected by the jury, namely that Pratt did not possess the gun. The District Court's sentence was without procedural error.

## III.

For the foregoing reasons, the judgment of the district court will be affirmed.