KELLY, Circuit Judge,
concurring.
I concur in the court’s opinion in all respects but one: I believe the district court erred in qualifying Marshal Almonte as an expert and admitting his testimony.
I.
“We review a district court’s evidentiary decisions for an abuse of discretion.” United States v. Lupino, 301 F.3d 642, 646 (8th Cir.2002) (citation omitted).. Courts frequently, and properly, allow law-enforcement officers to give expert testimony as to the “modus operandi” of drug traffickers. Black’s Law Dictionary defines modus operandi as: “a method of operating or manner of procedure; esp. a pattern of criminal behavior so distinctive that investigators attribute it to the work of the same person.” Black’s Law Dictionary 1095 (9th ed.2009). And because jurors may not be familiar with the usual way of trafficking drugs, expert testimony may help them understand how otherwise legitimate or commonplace items can be used in furtherance of the drug trade. United States v. Jeanetta, 533 F.3d 651, 657-58 (8th Cir.2008) (“The significance of seemingly innocuous household items, e.g., Ziploc bags and scales, along with the presence of sophisticated surveillance equipment, including scanners, cameras, monitors, and night vision goggles, combined with the presence of large amounts of cash, was highly relevant to Jeanetta’s *854 claim he was merely a drug user and not a trafficker.”); see also United States v. Schwarck, 719 F.3d 921, 924 (8th Cir.2013) (holding expert testimony about security cameras, radio frequency detectors, and large amounts of cash “permissibly explained the significance of evidence that would not be familiar to average jurors with no previous exposure to the drug trafficking business”) (citations omitted).
Marshal Almonte’s testimony was not properly characterized as “modus operandi” evidence. His testimony at trial did nothing more than describe a way to profile persons as being part of what he calls the “Mexican drug underworld” based on their purported religious beliefs, as revealed by their possession of religious icons and statuary. Marshal Almonte testified that he teaches law enforcement officers about the “Patron Saints of the Mexican drug underworld,” describing religious icons, statuary, prayer cards, and amulets, which he believes are “red flags and indicators” of possible drug activity. He testified that he developed the training sessions for two reasons: to “enhance officer safety” and to allow officers to “us[e] that information to assist them in furthering the investigation possibly leading to criminal activity.” He explained: “I tell the officers the rest is up to you to see if you have any other indicators there that would cause you to further investigate and possibly reach probable cause.” In short, he has trained law enforcement officers in the use of a tool to assist them in their efforts to identify a particular type of drug trafficker. This is exactly the sort of “drug courier profile” evidence this court has held is inadmissible. See United States v. Quigley, 890 F.2d 1019, 1021 (8th Cir.1989) (citing Florida v. Royer, 460 U.S. 491, 525 n. 6, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (Rehnquist, J., dissenting)). “Drug courier profiles are investigative tools, not evidence of guilt.” United States v. Carter, 901 F.2d 683, 685 (8th Cir.1990) (“The admission of a profile into evidence is inherently prejudicial and can easily influence a jury into thinking that the defendant is guilty.”).
Marshal Almonte’s testimony is also not sufficiently reliable to qualify as expert testimony. There is no “ ‘definitive checklist or test’ ” to determine when expert testimony is sufficiently reliable and, thus, admissible under Rule 702 of the Federal Rules of Evidence. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 593, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). In this case, the court contends that the reliability of Marshal Almonte’s testimony about narco-saint iconography “comes not from scientific foundations but from Almonte’s personal knowledge and experience.” Personal knowledge and experience may support a finding of reliability, but Marshal Almonte’s conclusions are not the product of his personal law enforcement knowledge and experience — he did not gather the information about these prayers and beliefs through surveillance, wiretaps, or even interviews of persons involved in this type of drug trafficking. Instead, Marshal Almonte calls upon his own self-study of the “iconography of the Mexican drug underworld,” his observations of such icons in narcotics cases, his “four or five” trips to Mexico, and his self-published materials and training seminars on the subject.[4] *855 With this information, Marshal Almonte then profiled individuals based on their purported religious beliefs. Possession or presence of a statue or icon may be a “red flag” or an “indicator” for law enforcement investigative purposes. But the rate of error of such evidence — evidence of the possession or presence of religious statues, icons, prayer cards, or amulets — as substantive evidence of guilt is too high, without more, to warrant its admissibility.
II.
While I find the district court abused its discretion in allowing Marshal Almonte to give expert testimony, I also conclude the error was harmless. “An improper evidentiary ruling is a nonconstitutional error that must be disregarded under Federal Rule of Criminal Procedure 52(a), if it does not have a substantial influence on the verdict.” United, States v. LaDue, 561 F.3d 855, 858-59 (8th Cir.2009) (citing Lupino, 301 F.3d at 645). “[I]n determining whether an error [is] harmless, we review the trial record as a whole....” Id. at 859 (quotation omitted). Based on the record as a whole, I find there was more than sufficient evidence to sustain the convictions of both defendants without Marshal Almonte’s testimony. Given the other evidence of guilt, I cannot say that his testimony had a substantial influence on the verdict. As such, I find the error was harmless and agree that the judgment of the district court should be affirmed.

. Marshal Almonte also relies on his personal experience as a Catholic. For example, he testified at trial that Saint Jude in particular was being "misused in my opinion being a Catholic” by "the drug traffickers and other criminals.” He suggested that he, as a Catholie, who "continues to pray to God and to Jesus Christ,” would properly "call upon Saint Jude to intervene on my behalf and on behalf of my loved ones who's dying, for a miracle.” In contrast, he "believe[d] the *855 criminals pray to Saint Jude because they perceive what they’re doing to be a lost cause or at least a very difficult or desperate situation.” Not only did he provide no particular examples of such prayers, his personal opinions on the proper use of prayer are beyond the scope of any law enforcement expertise he may have.