# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 09-2334/2594

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| John Worman, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: April 16, 2010
Filed: September 28, 2010

_____

Before RILEY, Chief Judge, COLLOTON and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

John Clark Worman challenges his conviction for mailing, possessing, and transporting a pipe bomb, citing certain inadmissible hearsay testimony and attacking the sufficiency of the evidence to support the verdict. The government cross-appeals, arguing that the district court abused its discretion by granting Worman's motion for a downward variance. Having jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, this court affirms in part, reverses in part, and remands for resentencing.

## I.

On June 29, 2005, someone left a package in the lobby of a rural Iowa post office. It was addressed to Paulette Torkelson, with no return address. The label displayed the name of a local antique shop she frequented. The postal clerk tried to call the shop, but the number on the label was not a working number. She then called Torkelson, who said she was not expecting a package. A postal inspector told the clerk to send the package to Des Moines for investigation. Inspecting the package, the investigator saw what appeared to be an old radio, and called the police. The police determined the package contained a bomb, which they detonated. No fingerprints were recovered from the package, radio, or bomb.

Interviewing Torkelson's coworkers at Winnebago Industries, agents focused on Worman. Torkelson was his supervisor there in the 1990s. Her negative reviews of him led to his 1994 departure after nearly 19 years with Winnebago. Just before he left Winnebago, Worman complained to company officials about Torkelson, but they dismissed his complaints (which he had kept on index cards).

Leaving Winnebago, Worman started his own business, building trailers and metal shipping racks. In 2002, he began manufacturing racks for Stitchcraft, a division of Winnebago. Worman's spouse, Shirley, was an employee of the division, and had recommended her husband to Stitchcraft's manager.

In 2004, Torkelson became a manager at Stitchcraft, supervising Shirley Worman. A year later, Stitchcraft stopped purchasing racks from Worman. One of Worman's good friends, a Stitchcraft employee, told him about rumors that Torkelson cancelled his rack-manufacturing arrangement with Stitchcraft. Two other employees had conversations about Torkelson's role in cancelling the arrangement that were likely overheard by Shirley Worman. The bomb was mailed three months after the arrangement ended.

Days after the bomb's discovery, authorities searched Worman's property. They found postage stamps matching those on the package. They recovered electronic devices, radio components, soldering guns, and drill bits. Material found in one drill bit exhibited similar physical and chemical characteristics to the back of the radio used in the bomb. Agents also seized gunpowder matching that recovered from the bomb and a small notebook with complaints about Torkelson written in 2004.

The label on the package and a self-inking stamp kit used on the package were available at a Staples store in Mason City, Iowa. According to store records, an individual shopped at the store five days before the bomb appeared at the post office, purchasing only the labels and stamp kit. Surveillance cameras showed a white truck with a topper entering the Staples parking lot before the purchase. A large white dog was inside the truck. Worman owned a white dog and large white truck with a topper.

Investigators seized Worman's truck. A fire destroyed his other vehicle the next day. He took the remains of the vehicle to a salvage yard, telling the yard's weighmaster that an electrical short caused the fire. The weighmaster relayed Worman's explanation to another salvage-yard employee. Worman told his son that the fire started after he drained the vehicle of motor oil and ran the engine to test how long the motor would last.

Investigators questioned Worman and his wife for two hours outside his home. He admitted buying labels like the one on the package and taking his dog with him on trips around town. He repeated the explanation he gave his son for the fire, adding he removed the battery and tires after the fire began and then pushed the vehicle on its side before it was engulfed in flames. A neighbor saw the vehicle engulfed in flames while it was upright. Worman also claimed no knowledge of Torkelson's involvement in cancelling his rack-manufacturing arrangement, but did not respond when his wife said that "everything had been going fine in her department until Miss Torkelson came . . . and then the racks ended."

Worman was tried for mailing, possessing, and transporting a pipe bomb, and for possessing it in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 2, 1716; 26 U.S.C. §§ 5861(d), 5845(f), 5871; 18 U.S.C. § 844(d); and 18 U.S.C. § 924(c)(1)(B)(ii). Over his objections, the court admitted hearsay testimony from Stitchcraft employees that most employees at the company believed that Torkelson caused the cancellation of his agreement. The district court also admitted Shirley Worman's statement to investigators, although the court had previously denied a government request to offer evidence that she blamed Torkelson for the cancellation. Finally, the court admitted testimony by the salvage-yard employee describing Worman's explanation for the vehicle fire to the weighmaster.

The jury convicted Worman on all counts. The district court rejected his motion for a new trial. Worman appeals his conviction. The government challenges the sentence of one-month imprisonment for the first three counts and 360 months for the fourth count of the indictment.

II.

Worman contends that the district court improperly admitted hearsay evidence, and, alternatively, that the admitted testimony was unduly prejudicial. This court reviews de novo the district court's interpretation and application of the rules of evidence, and reviews the factual findings supporting evidentiary rulings for abuse of discretion. *United States v. Barraza*, 576 F.3d 798, 804 (8th Cir. 2009). To the extent Worman failed to assert any objections under Rule 403, this court reviews for plain error. *United States v. Looking Cloud*, 419 F.3d 781, 785 (8th Cir. 2005); *United States v. Parker*, 364 F.3d 934, 942-43 n.2 (8th Cir. 2004). Under plain error review, Worman must show an error, that is plain, and affects substantial rights. *See Johnson v. United States*, 520 U.S. 461, 466-67 (1997). A plain error will not be corrected unless it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Olano*, 507 U.S. 725, 732 (1993).

The district court admitted, over objection: (1) the testimony of two Stitchcraft employees about rumors at the company regarding the cancellation of Worman's arrangement; (2) the testimony of the salvage-yard employee who had heard Worman's explanation for the vehicle fire from the weighmaster; and (3) Shirley Worman's out-of-court statements, made to the investigators, about Torkelson.

Hearsay is a statement, other than one made by a declarant testifying at trial, offered in evidence to prove the truth of the matter asserted. **Fed. R. Evid. 801(c)**. Hearsay is generally inadmissible unless it falls within an exception. *United States v. Eagle*, 515 F.3d 794, 801 (8th Cir. 2008).

## A.

Worman first challenges the testimony of two employees about rumors of Torkelson's involvement in cancelling the rack-manufacturing arrangement. The government did not offer the testimony to establish Torkelson's actual involvement. Rather, it was introduced to show that Shirley Worman knew of Torkelson's alleged role in the termination (and lay the foundation for testimony by the good friend).[1] Because the statement was not offered to prove the truth of the matter asserted, it is not hearsay. *See* **Fed. R. Evid. 801(c)**.

Worman contends that the testimony was highly prejudicial because it allowed jurors to attribute to him his wife's negative feelings toward Torkelson. Relevant evidence is generally admissible, but may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues,

---

[1]The government's attorney said that "if she [Shirley Worman] was aware of that information, then that gives motive to why he [John Worman] might blame her [Torkelson] for this," and "Our argument obviously is going to be Shirley Worman knew it, and I anticipate I'm going to have a witness who's going to say, 'I was also working that front office, and I shared that information with the defendant.'"

or misleading of the jury, or by considerations of undue delay, waste of time, or needlessly cumulative evidence. **Fed. R. Evid. 403**. This court gives deference to a district court's Rule 403 determination and reverses only for a clear abuse of discretion. *United States v. Nadeau*, 598 F.3d 966, 969 (8th Cir. 2010).

Before trial, the district court denied a government motion in limine to admit statements by witnesses that Shirley Worman blamed Torkelson for the termination. The court then reasoned that the statements were substantially more prejudicial than probative because Shirley Worman's thoughts provided little insight into what Worman thought or believed, invited unfair bias against him based on his wife's purported animosity, and distracted jurors from evidence that was more probative of Worman's own mental state and involvement in the offense. The district court erred when it abandoned this logic at trial. *See* **Fed. R. Evid. 403** advisory committee's note ("'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.").

Because Worman no longer worked at Winnebago, testimony about rumors there showed only that Winnebago employees, including Shirley Worman, may have believed that Torkelson helped cancel the arrangement with John Worman. The statements unfairly diverted the jury from focusing on Worman's own mental state, intent, motive, or involvement in the crime. *See United States v. Adams*, 401 F.3d 886, 900 (8th Cir. 2005) (describing unfairly prejudicial evidence as so inflammatory that it diverts the jury from material issues at trial). The district court was persuaded that evidence of the widespread nature of the rumors at Winnebago would serve to reinforce other evidence the government would later present: a friend of Worman's who also worked at Winnebago and heard the rumors later testified that he had shared the rumors with Worman.

However, the introduction of three different Winnebago employees' testimony on the widespread rumors in the workplace is more than cumulative – it leads jurors

to infer that Worman heard about the rumors from his wife in addition to the friend, because she was also a Winnebago employee and in closer confidence with Worman than his friend. This natural inference is precisely what the district court had found unfairly prejudicial when originally denying the motion in limine. The multiple statements were, therefore, needlessly cumulative, substantially more prejudicial than probative, and erroneously admitted at trial.

Worman next claims that the district court abused its discretion when it admitted the testimony of a salvage-yard employee who had heard Worman's explanation of the vehicle fire from the weighmaster. The challenged statement was hearsay upon hearsay because the employee relayed what a coworker had told her about what Worman said. The statement is inadmissible unless each level of hearsay falls within an exception to the hearsay rule. *See* **Fed. R. Evid. 805**; *United States v. Taylor*, 462 F.3d 1023, 1026 (8th Cir. 2007).

Worman's statement about the vehicle fire was admissible as an admission by a party opponent. *See* **Fed. R. Evid. 801(d)(2)(A)**; *United States v. Heppner*, 519 F.3d 744, 751 (8th Cir. 2008) (providing that admission by a party opponent is not hearsay when it is offered against a party and is the party's own statement). At oral argument, the government agreed that the second-level statement, the coworker's description of Worman's explanation, was inadmissible hearsay because it was offered to prove the truth of the matter asserted and did not fall within a recognized hearsay exception.

These two evidentiary errors were, however, harmless. *See United States v. Sanchez-Godinez*, 444 F.3d 957, 961 (8th Cir. 2006) (discussing harmless-error review following the erroneous admission of hearsay evidence); *United States v. Lupino*, 301 F.3d 642, 646-47 (8th Cir. 2002) (applying harmless-error review to the erroneous admission of prejudicial testimony). An evidentiary ruling is harmless if the substantial rights of the defendant were unaffected, and the error had no, or only

a slight, influence on the verdict. *United States v. Crenshaw*, 359 F.3d 977, 1003-04 (8th Cir. 2004). In determining harmlessness, this court considers the effect of the erroneously-admitted evidence in the overall context of the government's case. *See id*. Here, the government presented evidence that a good friend had told Worman about Torkelson's role in the cancellation of his arrangement. The government also offered evidence that Worman's explanation for the fire to investigators and his family was inconsistent with the neighbor's observations. Further, the government provided significant evidence about Worman's acts preceding the delivery of the bomb, his motive to attack Torkelson, and his possession of materials used in the weapon and its package. Given the weight of the evidence, the improperly admitted statements had only a slight effect on the jury's verdict. *See Lupino*, 301 F.3d at 647. Any error regarding the admission of the challenged statements was harmless.

B.


Worman attacks the district court's admission of Shirley Worman's statement to the investigators that "everything had been going fine in her department until Miss Torkelson came . . . and then the racks ended." Worman's only contemporaneous objection was "Objection, Your Honor. Hearsay." Because the government introduced this statement to establish motive for Shirley Worman's husband to harm Torkelson, the statement is not hearsay because its truth is not at issue. *See* **Fed. R. Evid. 801(c)**. Whether things were or were not fine at Stitchcraft until Torkelson began working there, Shirley Worman's statements indicate a motive to harm Torkelson.

On appeal, Worman argues this testimony was unduly prejudicial. Because the argument on appeal differs from the contemporaneous objection, this court reviews for plain error. **Looking Cloud**, 419 F.3d at 785. The district court erred by admitting Shirley Worman's statement because its probative value was substantially outweighed by the risk of unfair prejudice, confusion of the issues, and misleading of the jury. *See*

**Fed. R. Evid. 403**. Because the challenged statement established only Shirley Worman's animosity toward the victim and was not probative of Worman's own mental state, intent, motive, or involvement in the crime, the statement plainly invited the jury to draw an impermissible inference of guilt based on her beliefs and warranted exclusion under Rule 403. *See United States v. Dozie*, 27 F.3d 95, 98 (4th Cir. 1994) (declining to infer defendant's guilt based solely on a husband-wife relationship).

However, the error did not affect Worman's substantial rights because the statement was cumulative of other government evidence (the friend's testimony) that showed Worman knew of Torkelson's role in the cancellation. Thus, the additional evidence of motive had at most only a slight influence on the verdict. *See United States v. Dominguez Benitez*, 542 U.S. 74, 81 (2004) (noting that to affect substantial rights, an error must have a "substantial and injurious effect or influence" on the verdict). Accordingly, Worman has failed to meet his burden of proving plain error. *See United States v. Pirani*, 406 F.3d 543, 550-52 (8th Cir. 2005) (en banc) (explaining that the defendant has the burden of proving plain error, a showing that "should not be too easy" and demands "strenuous exertion to get relief.").

III.

Worman challenges the sufficiency of the evidence. The district court denied his motions for judgment of acquittal and a new trial, finding that the evidence was sufficient to support his conviction.

This court reviews de novo the district court's denial of a motion for judgment of acquittal. *United States v. Cannon*, 475 F.3d 1013, 1020 (8th Cir. 2007). A conviction will be reversed only if, after viewing the evidence most favorably to the verdict and giving the government the benefit of all reasonable inferences, no construction of the evidence supports the jury's verdict. *See United States v. Basile*, 109 F.3d 1304, 1310 (8th Cir. 1997). This standard applies even when the conviction

rests entirely on circumstantial evidence. *United States v. Davis*, 103 F.3d 660, 667 (8th Cir. 1996).

Worman asserts that the government lacked evidence linking him to the crime and did not establish his motive to commit it. Worman argues generally that the government failed to offer direct evidence of his involvement, instead producing items of questionable evidentiary value.

At the threshold, there is no requirement that the government produce direct evidence of a defendant's guilt. *See id.*; *United States v. Saddler*, 538 F.3d 879, 886 (8th Cir. 2008) ("Both direct and circumstantial evidence can be sufficient to support a conviction."). This court neither weighs the evidence nor assesses the credibility of the witnesses. *See United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999).

Moreover, the record is replete with the details of Worman's involvement in the offense. The evidence included his possession of mailing materials like those used on the package, his ownership of tools that could have been used to construct the bomb, a surveillance video showing a similar truck traveling to purchase mailing items, his lack of an alibi at the time the package was deposited, and his conduct after learning of the investigation. The government also established Worman's motive to commit the act based on his long-standing conflicts and frustrations with Torkelson. The evidence supported the jury's verdict.

This court next reviews the district court's denial of Worman's motion for a new trial for abuse of discretion. *See United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004). A district court on a defendant's motion may grant a new trial if the interest of justice requires. **Fed. R. Crim. P. 33(a)**. When considering the motion, the court need not view the evidence most favorably to the verdict, but must weigh the evidence and evaluate the credibility of the witnesses. *See United States v. Collier*, 527 F.3d 695, 701 (8th Cir. 2008). A district court will upset a jury's finding only if

it ultimately determines that a miscarriage of justice will occur. *See United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002).

Worman claims that insufficient evidence and the district court's evidentiary errors compel a grant of a new trial. His argument is unpersuasive. Substantial evidence tied Worman to the illegal conduct, providing a sufficient basis for the verdict. The government offered direct and circumstantial evidence indicating a motive, linking Worman to the construction and attempted delivery of the bomb, and describing Worman's efforts to destroy evidence. This court finds no abuse of discretion in the denial of Worman's motion.

IV.

The government cross-appeals, claiming the district court abused its discretion in imposing Worman's sentence. The district court properly calculated an advisory guidelines range of 168 to 210 months for the first three counts (mailing, possessing, and transporting a pipe bomb). The court imposed a sentence of only one month for those three counts, varying downward by 167 months from the bottom of the guidelines range. It imposed the mandatory minimum sentence of 360 months on Count 4 (possessing a pipe bomb in furtherance of a crime of violence).

This court reviews sentences in two steps: first, for significant procedural error; and if there is none, for substantive reasonableness. *United States v. O'Connor*, 567 F.3d 395, 397 (8th Cir. 2009). Because the government does not allege procedural error, this court reviews for reasonableness under a deferential abuse of discretion standard. *Id.* A district court may grant a downward variance after considering the factors set out in 18 U.S.C. § 3553(a). *United States v. Foster*, 514 F.3d 821, 824 (8th Cir. 2008). An abuse of discretion occurs when: (1) a court fails to consider a relevant factor that should have received significant weight; (2) a court gives significant weight to an improper or irrelevant factor; or (3) a court considers only the appropriate factors

-11-

but in weighing them commits a clear error of judgment. ***United States v. Kane***, 552 F.3d 748, 752 (8th Cir. 2009). A district court granting a variance from the guidelines range must ensure that its justification is sufficiently compelling to support the degree of the variance. ***Id.***

The government asserts that the district court improperly reduced Worman's sentence to mitigate the length of the mandatory consecutive minimum sentence on Count 4. Mandatory consecutive sentences are to be imposed independently of sentences for other counts. ***United States v. Guthrie***, 557 F.3d 243, 255 (6th Cir. 2009). The severity of a mandatory consecutive sentence is an improper factor that a district court may not consider when sentencing a defendant on related crimes. *See* ***United States v. Williams***, 599 F.3d 831, 834 (8th Cir. 2010), *cert. denied*, __ U.S. __, 130 S.Ct. 2134 (2010).

A review of the sentencing transcript shows that the district court improperly tied the variance to the mandatory minimum. The district court began its consideration of Worman's motion for a downward variance by asking the government, "why isn't a sentence of 361 months, 30-year mandatory minimum and a variance on Counts 1, 2, and 3 down to a month so a total sentence of 361 months, why isn't that sufficient but not greater than necessary in this case?" The first reason the district court put on the record in granting the variance was "because I believe a substantial variance is necessary to achieve the overarching sentencing principle of 3553(a) which is to achieve a sentence that is sufficient but not greater than necessary." The court continued, "I think a sentence of 361 months is sufficient but not greater than necessary," and concluded, "I think all of the sentencing purposes are adequately served by a 361-month sentence."

True, the district court detailed alternative reasons for the variance, and stated that the mandatory consecutive minimum sentence was a sentencing factor that weighed in the *government's* favor. However, taken in context, the various statements

lumping all the counts together and focusing on the total sentence demonstrate that the district court used the presence of the § 924(c) mandatory minimum to reduce Worman's sentence on the first three counts, defeating Congress's intent to enhance the punishment for using a weapon in a crime of violence. Accordingly, the case is remanded for resentencing.[2]

V.

The judgment of the district court is affirmed in part, reversed in part, and the case remanded for resentencing.

_____

---

[2]The government also asserts that the district court abused its discretion by giving excessive weight to Worman's age, length of marriage, lack of criminal history, and hope of release. In light of the disposition here, this court declines to express an opinion on the drastic variance in the original sentence, and the sufficiency of the justifications for it.