# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-1313

_____

United States of America

*Plaintiff - Appellee*

v.

Eric Scott McCauley

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: November 15, 2012
Filed: June 6, 2013

_____

Before SMITH, BEAM, and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

Eric McCauley appeals his conviction, following a jury trial, and his 276-month sentence for conspiracy to distribute 100 kilograms or more of marijuana,

possession with intent to distribute marijuana, and money laundering. We affirm the district court.[1]

## I. BACKGROUND

We view the following evidence, presented at trial, in the light most favorable to the guilty verdict. United States v. Hoffman, 626 F.3d 993, 995 (8th Cir. 2010). The case against McCauley was initiated in February 2007, after cooperating witness Thomas Grellner was stopped in the St. Louis area with approximately 50 pounds of marijuana in his vehicle. Grellner immediately cooperated by making a recorded call to McCauley and showing law enforcement the two locations where he knew McCauley lived and stored marijuana. Based on the information from Grellner, search warrants were obtained and executed at two locations (McCauley's residence and his stash house) in Columbia, Missouri, leading to the seizure of over 100 kilograms of marijuana and $10,000 in cash.

McCauley, who was present during the execution of the search warrant at his residence, was interviewed there shortly after officers executed the search warrant. According to Drug Enforcement Agency (DEA) Special Agent Steve Mattas, who executed the search warrant and conducted the interview, McCauley acknowledged that he had been involved in marijuana trafficking in the past, but stated that he had gotten out of it several years ago. After initial denials, McCauley admitted that he had $10,000 in cash on top of the entertainment center at the house where he was being interviewed. McCauley also admitted that he knew there was marijuana at the other house and that his fingerprints would be on it, but it was not his and he did not want to name the individual to whom it belonged. Mattas also testified (over McCauley's objection) that, during the interview, he asked McCauley if he wanted to

---

[1] The Honorable Nanette Laughrey, United States District Judge for the Western District of Missouri.

cooperate. McCauley responded that he was considering it and that he could arrange a 200-pound marijuana transaction, but that he wanted to discuss it with an attorney before proceeding. McCauley was given until the following day to decide, and when he did not contact Mattas, Mattas obtained an arrest warrant. Mattas returned to McCauley's residence, but McCauley was not there. A person at the residence got McCauley on the phone and Mattas advised McCauley to turn himself in. He did not do so immediately, but was nonetheless initially indicted in March 2007 and eventually voluntarily surrendered in May 2007. Upon his surrender and after his initial appearance, McCauley was immediately released on bond for supervised pretrial release. Evidence at trial indicated numerous pretrial supervision violations, most involving the sale of narcotics. On December 11, 2008, almost two years after these search warrants were executed in February 2007, cooperating witness Jeff Heath made a controlled buy of 6 ounces of marijuana from McCauley for approximately $2000. In a follow-up to that controlled buy, on December 18, 2008, police located a white Lincoln parked near the Country Club Plaza in Kansas City. Officers searched the vehicle and found a duffel bag with 12 pounds of high-grade marijuana in the trunk. Various papers connected to McCauley were found in the car. McCauley was arrested following the controlled buy, and his bond was revoked based upon numerous supervision violations on December 17, 2008.

On April 3, 2009, a federal grand jury returned a fifth superseding indictment against McCauley and two co-defendants. As relevant to this appeal, McCauley was charged with conspiracy to distribute and possess with intent to distribute 1,000 kilograms of marijuana, as well as a variety of other narcotics and money laundering offenses, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. §§ 2, 1956, and 1957. The other two co-defendants pled guilty, and on March 14, 2011, McCauley alone proceeded to trial.

In addition to law enforcement testimony, numerous other cooperating witnesses at trial described McCauley's involvement in the marijuana and money

-3-

laundering conspiracy between 2005 and 2008. Also at trial, McCauley attempted to establish, through argument and cross-examination, that after the search of his residence in February 2007, he did not have further interaction with the "old" conspiracy members, and instead began another distribution operation with different individuals. He asserts that the witnesses all testified that they bought from or sold for him either before February 2007 or after, but not during both time periods. Although he requested jury instructions regarding multiple conspiracies (proffered instructions 11 and 11A), the district court ruled that the evidence did not support a multiple conspiracy instruction. The court did, however, allow McCauley's counsel to make the multiple conspiracy argument to the jury during closing argument. After two days of testimony and evidence, the jury found McCauley guilty of the lesser-included charge of conspiracy to distribute over 100 kilograms of marijuana on count one, and guilty on all of the remaining counts.

At sentencing, the district court overruled several of McCauley's objections to the Presentence Investigation Report (PSR) and calculated a total offense level of 41 and a criminal history category of III, which resulted in an advisory Guidelines range of 360 months to life imprisonment, although the Guidelines range was effectively capped at the statutory maximum of 570 years. The court then considered arguments by both parties as well as the sentences of prior defendants with similar convictions, and ultimately varied downward, sentencing McCauley to 276 months in prison. McCauley appeals, arguing that the district court erred in refusing to grant his motion for judgment of acquittal, in refusing to give the instructions regarding multiple conspiracies, in refusing to grant his motion in limine to exclude statements he made about his potential cooperation with authorities, and in sentencing him to a substantively unreasonable sentence.

-4-

## II.    DISCUSSION

We review the district court's denial of a motion for judgment of acquittal challenging the sufficiency of evidence de novo, and reverse only if, after reviewing the evidence in the light most favorable to the government, "no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt." United States v. Winn, 628 F.3d 432, 439 (8th Cir. 2010). We review the district court's jury instructions and evidentiary rulings for an abuse of discretion. United States v. Yielding, 657 F.3d 688, 708 (8th Cir. 2011) (jury instructions); United States v. Gianakos, 415 F.3d 912, 919 (8th Cir. 2005) (denial of motion in limine).

### A.    Single Versus Multiple Conspiracy

McCauley argues that the government's proof as to count one was insufficient because the evidence showed multiple conspiracies, not the single conspiracy as charged in the indictment. According to McCauley, the government's proof showed only disconnected activity and at least two distinct conspiracies; one which preceded execution of the search warrant in February 2007 and ended with the arrest, and a second which developed after that time. McCauley further argues that the alleged multiple conspiracies created a variance between the indictment and the proof at trial. McCauley's final argument with regard to the single/multiple conspiracy theory is that the district court erred in refusing to give his proffered multiple conspiracy instructions.

To prove McCauley's guilt on count one–conspiracy to distribute over 100 kilograms of marijuana–the government was required to show that there was a conspiracy, that McCauley knew of the conspiracy, and that he intentionally joined the conspiracy. United States v. Slagg, 651 F.3d 832, 840 (8th Cir. 2011). Whether trial evidence established a single conspiracy "is determined by the totality of the circumstances," including consideration of the nature and location of activities and

-5-

events, identities of the co-conspirators, and the time frame in which the acts occurred. Id. at 841-42 (quotation omitted). In addition, "whether the government has proven a single conspiracy or multiple conspiracies is to be resolved by the jury since it is a question of fact as to the nature of the agreement." United States v. Riebold, 135 F.3d 1226, 1230-31 (8th Cir. 1998).

The government primarily argues that McCauley's activities and the way the conspiracy was continuously carried out by him both before and after the 2007 search warrant shows that there was one ongoing conspiracy, regardless of who helped or participated with McCauley before or after February 2007. McCauley argues that the break following the 2007 search warrant and the new actors he dealt with after that show a new and distinct conspiracy, and that he did not act continuously from 2005 until December 23, 2008, as alleged in the indictment. McCauley cites Kotteakos v. United States, 328 U.S. 750 (1946) in support of his multiple conspiracy argument. McCauley also argues that the evidence of multiple conspiracies created a variance from the indictment. "A variance between an indictment and the Government's proof at trial occurs if the Government proves multiple conspiracies under an indictment alleging only a single conspiracy." Slagg, 651 F.3d at 841.

We find there was sufficient evidence to support the jury's finding of one conspiracy. Two witnesses, Clough and Pierson, dealt with McCauley both before and after the 2007 search warrant. McCauley disputes this, but McCauley himself draws the line separating the supposed separate conspiracies at the February search, and in trial testimony both witnesses aver to dealing with McCauley for an admittedly brief period of time after the February 2007 search. Pierson testified on direct examination that he stopped dealing with McCauley after McCauley was *arrested*, which did not occur until McCauley self-reported in May 2007. Upon further questioning, Pierson clarified that he bought about ten more times from McCauley after McCauley's arrest, a scenario that would have been quite possible given that McCauley was given immediate pretrial release. On cross-examination, Pierson

-6-

identified the time frame for those ten transactions, testifying that he did not stop dealing with McCauley until the fall of 2007. Similarly, Clough testified that he dealt with McCauley on at least a couple of occasions after the February search warrant.

In the instant case, McCauley was the linchpin of a drug conspiracy that evolved over time, and in that regard, the case is much more like Slagg than Kotteakos. See Slagg, 651 F.3d at 842 (holding that one conspiracy may exist despite the involvement of multiple groups and the performance of separate acts). McCauley's arguments about the evidence showing a variance from the single-conspiracy indictment were also made in Slagg, and we rejected them, noting that a conspiracy may involve drugs from various sources, multiple groups of people, and the performance of separate acts without there being multiple conspiracies. Id. Here, as in Slagg, the evidence supported the existence of a single conspiracy.[2]

As noted, Kotteakos is distinguishable and, in fact, demonstrates why any possible error with regard to a variance from the indictment in the instant case is harmless. In Kotteakos, thirteen co-defendants were tried at the same time in a case involving a financial conspiracy to defraud the Federal Housing Administration. The key witness, who was the one and only central source dealing with all defendants, had pleaded guilty and testified against the others. 328 U.S. at 752-53. The evidence against all thirteen defendants tended to show that the central source had transacted business with each defendant to fraudulently procure housing loans, but there was no

_____

[2]Because the evidence supported a single conspiracy, the district court did not abuse its discretion in refusing to give McCauley's proffered multiple conspiracy instructions. United States v. Davis, 690 F.3d 912, 925 (8th Cir. 2012) (holding that "[i]f the evidence supports a single conspiracy, the failure to give a multiple conspiracy instruction is not reversible error" (quotation omitted)). Although it is curious that the district court allowed counsel to argue the multiple conspiracy theory without giving a multiple conspiracy instruction, we find that under Davis, its failure to give the instruction was not reversible error.

connection, other than this witness, among the defendants on trial. Id. at 754. The Court pointed out that the proof at trial made a case "not of a single conspiracy, but of several, notwithstanding only one was charged in the indictment." Id. at 755. The Court considered whether this variance between the proof and the indictment was amenable to harmless error analysis, and decided that it was not. The Court held that in the context of the massive trial of numerous defendants, "[t]he dangers of transference of guilt from one to another across the line separating conspiracies, subconsciously or otherwise, are so great that no one really can say prejudice to substantial right has not taken place." Id. at 774.

Conversely, here, McCauley was the connection between all of the spokes, and he was the only defendant on trial. Any possible variance between the single conspiracy indictment and possible evidence of multiple conspiracies at trial did not infringe upon McCauley's substantial rights. Substantial rights are affected when a defendant is "prejudiced by a spillover of evidence from one conspiracy to another" or "could not reasonably have anticipated from the indictment the evidence to be presented against him." United States v. Barth, 424 F.3d 752, 759 (8th Cir. 2005) (quotation omitted). The spillover situation, as explicated in Kotteakos, is not present where McCauley was tried alone. And the indictment, charging McCauley with one continuous conspiracy from 2005 to 2008 reasonably gave McCauley notice of the evidence to be presented against him. Accordingly, McCauley's arguments with regard to the single versus multiple conspiracy theory are without merit.

**B.     Motion to Exclude Rule 410 Evidence**

McCauley next argues that the district court abused its discretion in denying his pretrial motion in limine seeking to exclude testimony by Agent Mattas regarding McCauley's statements and offers to cooperate during the course of discussions following the execution of the search warrant. Mattas testified that shortly after search warrants were executed at a stash house and at McCauley's home, McCauley

was interviewed in his home and Mattas asked him if he "was interested in trying to help himself out" by cooperating. At that time, McCauley said he was considering it and asserted that he could in fact arrange a large marijuana transaction, but wanted to talk to an attorney before deciding whether to proceed. Mattas testified that he gave McCauley until 5:00 p.m. the following day to decide, but he did not hear back from McCauley, and when that time expired, Mattas returned with an arrest warrant. However, McCauley had absconded. The government argues that this conversation, which occurred at McCauley's house directly following the execution of a search warrant, did not constitute plea discussions. We agree.

McCauley points to Federal Rule of Criminal Procedure 11 and Rule 410 of the Federal Rules of Evidence. Rule 11 states that the admissibility of "a plea, a plea discussion, and any related statement is governed by" Rule 410, and Rule 410 precludes the admission of, among other things, "a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea." Fed. R. Crim. P. 11(f); Fed. R. Evid. 410(a)(4). We have previously defined Rule 410's protection to include conversations with a government agent who has the "express authority to act for the prosecuting government attorney," even if the government attorney is not present at the time of the conversation. United States v. Greene, 995 F.2d 793, 799 (8th Cir. 1993); see also United States v. Millard, 139 F.3d 1200, 1205-06 (8th Cir. 1998) (excluding evidence of plea negotiations where the prosecutor was involved, though not always present). Greene further stands for the proposition that a government agent's representation that he had the authority to negotiate a plea bargain might be sufficient to bring any consequent statements within the purview of Rule 410. 995 F.2d at 799. The government agent's actual authority may be express or implied. Id. at 800. Ultimately, we look to the specific facts and totality of the circumstances in deciding whether a statement is made during the course of plea discussions within the meaning of Rules 11 and 410. United States v. Morgan, 91 F.3d 1193, 1195 (8th Cir. 1996). Factors to consider in the "totality" analysis are

whether a specific plea offer was made, a deadline to plead was imposed, an offer to drop charges was made, discussions of the Sentencing Guidelines occurred, or a defense attorney was retained. Id. at 1196.

While it is true that Rule 410 is read broadly by our court, even an expansive view of Rule 410 does not cover the situation described here. McCauley had not been charged or even arrested at the time the statements were made. Cf. United States v. Edelmann, 458 F.3d 791, 804-06 (8th Cir. 2006) (holding that Rule 410 did not apply to pre-indictment meetings with government agents whom defendant contacted and met with voluntarily seeking to avoid indictment). Although the timing of the conversation before arrest and indictment is not necessarily dispositive, it is certainly a factor in the totality of the circumstances. And, we note that no specific plea offer was made, just an inquiry as to whether McCauley wanted to "help himself out." There was a deadline imposed, but it was not a deadline to plea, it was a deadline to cooperate. No offer to drop charges was made, obviously, because McCauley had not yet been charged. There is no indication that a discussion of sentencing occurred, and while McCauley indicated he wished to discuss the situation with counsel, it is unlikely he did, as he absconded the next day instead of cooperating. Again, the totality of the circumstances is the ultimate inquiry, but the difficulty of trying to fit the Morgan factors to the situation that occurred here demonstrates the lack of actual plea negotiations. We find that under the totality of the circumstances, plea discussions were not taking place between Mattas and McCauley in February 2007, on the night the search warrant was executed. Accordingly, the district court did not abuse its discretion in refusing to exclude the evidence pursuant to Rule 410.

McCauley also argues on appeal that the statements to Mattas were excludable as unduly prejudicial pursuant to Federal Rule of Evidence 403. McCauley did not advance this theory in front of the district court, so our review is for plain error. United States v. Worman, 622 F.3d 969, 976 (8th Cir. 2010). In this case, there was no plain error or even an abuse of discretion in the court's decision to admit the

evidence, since it was relevant and there was no danger of any *unfair* prejudice. Accordingly, we affirm the district court's evidentiary rulings.

### C.    Reasonableness of Sentence

McCauley's final argument is that the 276-month sentence he received, which was an 84-month downward variance from the advisory Guidelines range, was unreasonable, claiming that the district court unduly relied upon two or three unrelated cases in its proportionality analysis under 18 U.S.C. § 3553(a)(6).  A district court's sentencing determinations are reviewed for an abuse of discretion, and should only be reversed if the court "fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors."  United States v. Wilcox, 666 F.3d 1154, 1156 (8th Cir. 2012) (quotation omitted).

In assessing whether to vary downward from the advisory Guidelines range and contemplating what would constitute a substantively reasonable sentence, the district court considered factors such as McCauley's damage to society by distributing drugs, his persistent criminal behavior, his use of sophisticated means to launder the drug money, and the amount of drugs distributed throughout the conspiracy.  After much consideration, the court decided that a sentence of 276 months, a downward variance from the 360 months to life imprisonment advisory Guidelines range (statutorily capped at 570 years), was substantively reasonable.  Where, as here, a district court has varied below the Guidelines range, "it is nearly inconceivable that the court abused its discretion in not varying downward still further."  United States v. McKanry, 628 F.3d 1010, 1022 (8th Cir. 2011) (quotations omitted).  While the district court did mention its sentencing of other criminal defendants, who were arguably not similarly situated with McCauley, we do not find that the district court

-11-

abused its discretion by placing any *undue* weight on those comparisons.  McCauley's sentencing arguments are accordingly without merit.

## III.   CONCLUSION

We affirm the district court.

_____