# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4116
_____

United States of America

*Plaintiff - Appellee*

v.

Elizabeth Lopez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: September 22, 2017
Filed: January 24, 2018

_____

Before SMITH, Chief Judge, WOLLMAN and GRUENDER, Circuit Judges.

_____

SMITH, Chief Judge.

A jury convicted Elizabeth Lopez of possession of methamphetamine with the intent to distribute and conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)–(B), and 846. The district court[1] sentenced Lopez

_____

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

to 120 months' imprisonment, followed by five years of supervised release. Lopez appeals, arguing that the district court erred by denying her motion for a judgment of acquittal or a new trial. We affirm.

## I. *Background*

Following his drug arrest in August 2015, Joshua Navrkal opted to cooperate with law enforcement and revealed his methamphetamine source. At law enforcement's request, Navrkal called a phone number stored as "Omaha Mexican Lady" on his phone. After a very brief conversation, he told the officers that his suppliers were on their way. Navrkal subsequently received confirmatory text messages from that number. He told the officers that the drug delivery soon was to take place at a residence in Sioux City, Iowa. Law enforcement arrived at the house, surveilled the scene, and observed an SUV with Nebraska plates arriving at the house. Officers arrested the car's driver and the female passenger. A drug-detection dog alerted to the presence of drugs. At that point, the passenger— Lopez—informed the officers that she had one ounce of methamphetamine in her bra. Law enforcement seized the drugs from Lopez. Officers found no other drugs or drug paraphernalia. Laboratory analyses showed that Lopez carried 26.1 grams of 100 percent pure methamphetamine at the time of her arrest. Lopez claimed that she carried the methamphetamine for personal use only.

The government subsequently charged Lopez with two counts: (1) conspiracy to distribute methamphetamine and (2) possession of methamphetamine with intent to distribute. The case proceeded to a jury trial. Prior to trial, the district court proposed a set of jury instructions, which included an instruction permitting the jury to find an "intent to distribute" based on drug purity. Lopez objected, arguing that purity alone does not suggest an intent to distribute, since some recreational users may seek pure methamphetamine. The court then modified the instruction to say that the jurors "may, but are not required, to infer an 'intent to distribute' from . . . drug purity, if it suggests that the drugs were intended to be 'cut' or diluted before distribution,

rather than used in a 'pure' form, and the defendant was aware of such purity." Instructions to the Jury at 13, *United States v. Lopez*, No. 5:15-cr-04051-MWB-1 (N.D. Iowa May 24, 2016), ECF No. 73-1.

At trial, Navrkal and his once girlfriend and co-conspirator, Tonya Cole–Cabrera, testified for the government. They both identified Lopez as their direct source of methamphetamine. Navrkal testified that Lopez delivered the drugs to him or Cole–Cabrera approximately 8 to 12 times in 2015, at one- to two-ounce quantities each time. Lopez, Navrkal, and Cole–Cabrera communicated either by phone calls or through text messages. To obtain methamphetamine, Navrkal or Cole–Cabrera would either call or text Lopez. They would then meet up at a location in Sioux City. Cole–Cabrera corroborated Navrkal's testimony. Cole–Cabrera also testified about a series of text messages with Lopez in which they discussed wire transfers of money for Cole-Cabrera's drug debt to Lopez.

The major contested issue at trial was whether the drugs were intended for distribution or for personal use. Expert witnesses testified for both parties. Lopez's expert, a substance abuse counselor, testified that "[w]hen someone's on a methamphetamine binge," she's "heard people use up to seven and a half grams" of drugs per day. Transcript of Trial, Vol. 2, at 385, *United States v. Lopez*, No. 5:15-cr-04051-MWB-1 (N.D. Iowa May 26, 2016), ECF No. 87. A Drug Enforcement Administration (DEA) agent testified for the government. The following exchange occurred:

[Prosecutor]: So the quantities of use—how has quantities for users been affected by the purity?

[Agent]: Well, you can't do—you could—if you do a gram of crystal meth, that's a lot. If you do a gram of methamphetamine that's been cut 5 or 6 times so the purity is 10 percent or less, a gram of that is not the same as a gram of crystal meth. So you could do the cut

methamphetamine or the diluted form much more often than you could the crystal meth because the purity is a lot lower, so it's going to process through your body faster, and it's not going to—it's not going to overload your body as if you would do the same amount of the pure crystal meth.

[Prosecutor]: Again, based on your training and experience, what is a typical user quantity of crystal meth?

[Agent]: Of crystal meth? It depends on their level of experience with it or if they're addicted or not. A first-time user would—a quarter gram, one quarter of one gram, would be probably about right for first ti—for beginners. The most I have ever heard of in speaking—and again, I speak to defendants, users, family members consistently. And I always have throughout my career. I did meet a guy that I arrested that claimed he was doing—

[Lopez's Counsel]: Objection. Hearsay.

THE COURT: Overruled.

[Agent]: I did meet a subject that I had arrested, and just in general conversation with him, I asked him how much his habit was per day, and he stated that he was doing two grams of crystal meth per day and had been doing so for approximately two years. And I believed him. His body was wrecked. He was just a mess. And other than that, I—if you—I don't think I've had anybody tell me they've used more than one gram per day of crystal meth other than that subject.

*Id.* at 279–80.

The jury ultimately convicted Lopez on both counts. Lopez then moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c) or alternatively for a new trial under Federal Rule of Criminal Procedure 33, premised on insufficient evidence to convict and the government's failure to prove venue. Additionally, in her

-4-

Rule 33 argument, Lopez renewed her hearsay objection to the DEA agent's testimony regarding the identified methamphetamine user.

The district court denied the motion. The court concluded that "based [on] the evidence presented at trial, the jury could have reasonably concluded that the prosecution had established each of the elements of the charged offenses." *United States v. Lopez*, No. 5:15-cr-04051-MWB-1, slip op. at 3 (N.D. Iowa Aug. 15, 2016), ECF No. 95. On the venue issue, the court noted that although "the prosecution failed to introduce any evidence that Sioux City, where [the charged crimes took place], is in the Northern District of Iowa," it "met its burden" of establishing by a preponderance of the evidence that at least part of the crime occurred in Sioux City, Iowa. *Id.* at 3, 5. The district court then took judicial notice that Sioux City lies within the geographic boundaries of the Northern District of Iowa. It then sentenced Lopez to 120 months' imprisonment, the statutory minimum.

## II. *Discussion*

On appeal, Lopez alleges four errors. First, she argues that the district court erred in denying her motion for a new trial based on impermissible government witness testimony. Second, she contends that the district court erred in giving a jury instruction permitting an inference of intent to distribute methamphetamine based on drug purity. Third, she argues that the government failed to establish venue and that the district court erred in taking judicial notice of venue. Finally, she contests the sufficiency of the evidence to sustain a conviction.

### A. *Witness Testimony*

We first address Lopez's argument that the district court erred in denying her Rule 33 motion for a new trial based on the DEA agent's testimony, claiming that it was improper and that it substantially prejudiced her case. "Rule 33 motions are disfavored and reviewed for a clear abuse of discretion, a rigorous standard." *United States v. Rubashkin*, 655 F.3d 849, 857 (8th Cir. 2011) (citation omitted). A district

court's ruling on a motion for new trial will be reversed "only if the court clearly abused its discretion such that a serious miscarriage of justice may have occurred." *United States v. Ryder*, 414 F.3d 908, 915 (8th Cir. 2005) (citation omitted).

### 1. *Hearsay*

Lopez contends that the DEA agent's statement was improper because it was impermissible hearsay. "We review a district court's evidentiary rulings for abuse of discretion." *United States v. Lomas*, 826 F.3d 1097, 1105 (8th Cir.), *cert. denied*, 137 S. Ct. 315 (2016) (citing *United States v. Burch*, 809 F.3d 1041, 1045 (8th Cir. 2016)). Evidentiary rulings are subject to harmless error analysis. *United States v. Lupino*, 301 F.3d 642, 645 (8th Cir. 2002) (citation omitted). "An evidentiary ruling is harmless if the substantial rights of the defendant were unaffected, and the error had no, or only a slight, influence on the verdict." *United States v. Worman*, 622 F.3d 969, 976 (8th Cir. 2010) (citation omitted).

"Federal Rule of Evidence 702 permits a district court to allow the testimony of a witness whose knowledge, skill, training, experience or education will assist a trier of fact in understanding an area involving specialized subject matter." *United States v. Solorio–Tafolla*, 324 F.3d 964, 966 (8th Cir. 2003) (quoting *United States v. Molina*, 172 F.3d 1048, 1056 (8th Cir. 1999)). We have previously held that a district court did not abuse its broad discretion in admitting under Rule 702 the expert testimony of a police sergeant who testified in a prosecution for possession with intent to distribute cocaine about "the amount of cocaine which would be for distribution and not personal use." *United States v. Smith*, 789 F.3d 923, 930 (8th Cir. 2015); *see also Solorio–Tafolla*, 324 F.3d at 965.

Hearsay "means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Federal Rule of Evidence 703 permits an expert to "rely on otherwise inadmissible hearsay evidence

in forming his opinion if the facts and data upon which he relies are of a type reasonably relied upon by experts in his field." *Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1182 (8th Cir. 1997) (citations omitted). "Only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Id.* (quoting *Hose v. Chi. Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995)).

Here, the DEA agent relied on his 18-year experience interviewing addicts, arrestees, and their family members to formulate his opinion. He testified that in the past a methamphetamine user could use large quantities of drugs daily because of low drug purity. However, more recently, illegal drugs entering the market are of such high purity that it has become physically impossible even for seasoned addicts to consume large amounts of methamphetamine. The agent noted that he knew of an individual who had consumed two grams daily. He then proceeded to explain why he found that person's statement believable. To the extent that the agent relied on any out-of-court statements to form his opinion, the reliance was of the type reasonably relied on by experts in the field. Indeed, Lopez's own expert witness depended on exactly the same type of information—interviews with recovered users and addicts—to base her opinion that a methamphetamine addict could use much higher quantities on a "drug binge."

The statements, however, were not hearsay. They were not offered to prove the truth of the matter at issue—the quantity of methamphetamine consumed by the unidentified drug user. Rather, the statements were offered to establish that the most the agent had ever heard anyone claim to use daily was two grams, in contrast to Lopez's expert, who heard that a single user can consume up to 7.5 grams of methamphetamine daily. Lopez conceded this point at oral argument. The district court correctly admitted the agent's testimony under Federal Rule of Evidence 702.

Lopez next argues that even if the agent's testimony satisfies Rule 702, Rule 703 nevertheless prohibits its admission because the statement's prejudicial effect outweighed its probative value; the agent added that he believed the drug user because "[h]is body was wrecked" and "[h]e was just a mess." Transcript of Trial, Vol. 2, at 280. Lopez's argument fails. Rule 703 applies only where the expert witness relies on "otherwise inadmissible hearsay." *United States v. Martinez*, 3 F.3d 1191, 1197 (8th Cir. 1993). Because the agent's statement was not hearsay and was properly admitted under Rule 702, the testimony is not governed by Rule 703. Finally, even if the agent's statement was hearsay, in light of the overwhelming evidence of drug sales—the co-conspirators' testimony, the text message exchanges, the seizure of a large quantity of methamphetamine from Lopez in the absence of any "use" paraphernalia—the admission of the statement had slight or no influence on the outcome of the trial. *See Worman*, 622 F.3d at 976.

## 2. *Confrontation Clause*

Lopez argues for the first time on appeal that the agent's testimony also violated her Sixth Amendment confrontation rights. "When a defendant fails to 'raise a Confrontation Clause objection at trial, we review [the] claim for plain error.'" *United States v. Johnson*, 688 F.3d 494, 504 (8th Cir. 2012) (quoting *United States v. Tenerelli*, 614 F.3d 764, 772 (8th Cir. 2010)). Under this standard of review,

> there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*United States v. Pirani*, 406 F.3d 543, 550 (8th Cir. 2005) (en banc). As we explained above, the agent's testimony was not hearsay. *See supra* Part II.A.1. "A statement that is not hearsay raises no Confrontation Clause concerns." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999) (en banc) (citation omitted). Further, the Confrontation

Clause concerns only statements that are testimonial in nature. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Here, the agent testified that he gleaned information "just in general conversation." Transcript of Trial, Vol. 2, at 280. Accordingly, we find no plain error.

### B. *Jury Instruction*

Lopez next asserts that the district court erred in giving a jury instruction permitting an inference of "intent to distribute" based on drug purity. She acknowledges, however, that we continue to approve of such inferences. *See United States v. Shurn*, 849 F.2d 1090, 1093 (8th Cir. 1988) ("The intent to distribute may be proven by either direct or circumstantial evidence and may be inferred from such things as the possession of a large quantity of a controlled substance, its high purity level, the presence of paraphernalia used to aid in the distribution of drugs, large sums of unexplained cash, and the presence of firearms.").

"We review the district court's jury instructions for an abuse of discretion" and "will reverse a jury verdict . . . when the errors misled the jury or had a probable effect on the jury's verdict." *United States v. Pereyra–Gabino*, 563 F.3d 322, 328 (8th Cir. 2009) (ellipsis in original) (quoting *Slidell, Inc. v. Millennium Inorganic Chems., Inc.*, 460 F.3d 1047, 1054 (8th Cir. 2006)). Here, the district court instructed the jury that it *may*, *if it chose*, infer an intent to distribute *if it finds that the methamphetamine was intended to be cut or diluted*. Nothing in the instruction conflicted with trial testimony. Thus, the instruction did not likely mislead the jury or have a probable effect on its ultimate verdict. Accordingly, we find no abuse of discretion in the court's instruction to the jury.

### C. *Judicial Notice of Venue*

Lopez next contends that the government failed to prove venue and that the district court erred by: (1) taking judicial notice that Sioux City, Iowa, lies within the geographic boundaries of the Northern District of Iowa, and (2) finding that the

government successfully proved venue by a preponderance of the evidence. "We review a district court's decision to take judicial notice for abuse of discretion." *Am. Prairie Constr. Co. v. Hoich*, 560 F.3d 780, 796 (8th Cir. 2009) (citation omitted). We likewise review the district court's evidentiary rulings for abuse of discretion. *United States v. Worthey*, 716 F.3d 1107, 1114 (8th Cir. 2013).

"In a criminal case, the question of venue is not merely a legal technicality but a significant matter of public policy." *United States v. Black Cloud*, 590 F.2d 270, 273 (8th Cir. 1979) (citing *United States v. Johnson*, 323 U.S. 273, 276 (1944)). "Proof of venue is an essential element of the Government's case," but "[u]nlike other elements of a crime . . . , venue need only be proved by a preponderance of the evidence." *United States v. Netz*, 758 F.2d 1308, 1312 (8th Cir. 1985) (quoting *United States v. Massa*, 686 F.2d 526, 527–28 (7th Cir. 1982)). In conspiracy cases, venue is proper "in any district where *any* conspirator commits an overt act, even if other conspirators were never physically present in that district." *United States v. Nguyen*, 608 F.3d 368, 374 (8th Cir. 2010) (citation omitted). "Venue is ordinarily a question of fact for the jury to decide." *United States v. Redfearn*, 906 F.2d 352, 354 (8th Cir. 1990) (citations omitted).

The district court, however, may take judicial notice of facts. These facts may be either adjudicative or legislative. "Adjudicative facts are 'facts that normally go to the jury in a jury case. They relate to the parties, their activities, their properties, [and] their businesses.'" *Qualley v. Clo-Tex Int'l, Inc.*, 212 F.3d 1123, 1128 (8th Cir. 2000) (quoting Fed. R. Evid. 201 advisory committee's note to subdivision (a)). Legislative facts, on the other hand, "are established truths, facts or pronouncements that do not change from case to case but apply universally." *United States v. Gould*, 536 F.2d 216, 220 (8th Cir. 1976). Under Rule 201, when a court takes judicial notice of an adjudicative fact in a criminal case, it "must instruct the jury that it may or may not accept the noticed fact as conclusive." *See* Fed. R. Evid. 201(f). Rule 201, however, does not extend to legislative facts, and a district court "[is] not obligated to inform

the jury that it could disregard the judicially noticed fact." *Gould*, 536 F.2d at 221 (finding no error when the district court took judicial notice that cocaine is a controlled substance).

Here, the government showed that Lopez brought methamphetamine to Sioux City, where Navrkal and Cole–Cabrera then distributed the drugs. The district court took judicial notice of a legislative fact—that Sioux City lies within the geographic bounds of the Northern District of Iowa. Sioux City is definitely part of the Northern District of Iowa. *See* 28 U.S.C. § 95(a)(3). Thus, we find no abuse of discretion and hold that "venue as a jurisdictional fact is a proper subject for judicial notice." *Government of Canal Zone v. Burjan*, 596 F.2d 690, 693 (5th Cir. 1979) (citations omitted); *see also United States v. Kelly*, 535 F.3d 1229, 1235–36 (10th Cir. 2008); *United States v. Greer*, 440 F.3d 1267, 1272 (11th Cir. 2006); *United States v. Lavender*, 602 F.2d 639, 641 (4th Cir. 1979); *United States v. Prueitt*, 540 F.2d 995, 1006 (9th Cir. 1976); *United States v. Mendell*, 447 F.2d 639, 641 (7th Cir. 1971); *United States v. Charlton*, 372 F.2d 663, 665 (6th Cir. 1967).

Therefore, we also hold that the district court did not abuse its discretion in finding that the government met its burden of proof for venue.

D. *Sufficiency of the Evidence*

Finally, Lopez argues that the district court erred in denying her motion for judgment of acquittal based on insufficient evidence to convict. "We review de novo the denial of a motion for judgment of acquittal based on the sufficiency of the evidence." *United States v. Fang*, 844 F.3d 775, 778 (8th Cir. 2016) (quoting *United States v. Griffith*, 786 F.3d 1098, 1102 (8th Cir. 2015)). Evaluating the evidence in the light most favorable to the verdict, we will reverse "only if 'no reasonable jury could have found the defendant guilty beyond a reasonable doubt.'" *Id.* (quoting *United States v. Serrano–Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)). This standard is "very strict." *United States v. Thunder*, 745 F.3d 870, 875 (8th Cir. 2014) (citation omitted).

-11-

"If the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction." *United States v. Burks*, 934 F.2d 148, 151 (8th Cir. 1991) (citation omitted).

Here, we find the evidence sufficient to support Lopez's conviction. Two of her co-conspirators testified against her. They testified that she delivered methamphetamine to them 8 to 12 times, totaling about one pound of 100 percent pure methamphetamine in the span of one year. Text messages introduced by the government corroborated the co-conspirator testimony. Additionally, law enforcement arrested Lopez with nearly one ounce of methamphetamine on her person. Although Lopez claimed the methamphetamine was for her personal use, the jury chose to believe otherwise. *See United States v. Mann*, 701 F.3d 274, 298 (8th Cir. 2012) ("[W]itness credibility is for the jury to determine. 'It is the function of the jury, not an appellate court, to resolve conflicts in testimony or judge the credibility of witnesses.'" (quoting *United States v. Harrison*, 671 F.2d 1159, 1162 (8th Cir. 1982) (per curiam))).

The district court committed no error in denying Lopez's motion for a judgment of acquittal.

## III. *Conclusion*

For the reasons stated above, we affirm the judgment of the district court.

_____