# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-2978
_____

United States of America

*Plaintiff - Appellee*

v.

Justin Domonique Davis

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: April 15, 2025
Filed: September 11, 2025
_____

Before SMITH, SHEPHERD, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

This is a case about identity or, as Justin Domonique Davis argues, mistaken identity. After Davis defended himself at trial, a jury found him guilty of two charges related to a burglary at Church's Chicken, aiding and abetting Hobbs Act robbery, 18 U.S.C. §§ 1951(a) and 2, and use of a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c)(1)(A)(i). Davis later pleaded guilty to more

Hobbs Act and firearm offenses involving other robberies. The district court[1] sentenced him to a total of 180 months in prison, a downward departure. His main argument on appeal is that there was insufficient evidence to show that he was one of the two men who robbed the Church's Chicken. He also challenges the verdict form and the reasonableness of his sentence. We affirm his conviction and his sentence.

## I. Sufficiency of the Evidence

We first address whether the Government had enough evidence to prove beyond a reasonable doubt that Davis was one of the two Church's Chicken robbers. We review *de novo*, "view[ing] the evidence in the light most favorable to the verdict and revers[ing] only if 'no reasonable jury could have found the defendant guilty beyond a reasonable doubt.'" *United States v. Hoeft*, 128 F.4th 917, 921 (8th Cir. 2025) (citation omitted).

The jury watched surveillance video showing two masked men crossing the street, drawing guns, and entering the Church's Chicken. One man wore a gray hoodie with a Missouri Tiger logo on the front and gloves; the second wore a black jacket and only one glove. The first robber stood guard with his hand near his neck. The second pointed his gun at employees and then fired into the air. When he tried to fire again, the gun exploded, sending the barrel and cylinder flying behind the counter. After taking cash, both robbers fled, heading in the same direction they had approached from.

The Government introduced evidence that there was DNA from three people on the gun barrel and that Davis was the major contributor with a frequency of one in eight quintillion people. He was also a possible contributor of the DNA found on the revolver cylinder, along with one other person, but only with a frequency of one

---

[1]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri, tried the case. The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri, sentenced Davis.

in thirty-one unrelated people. The Government also called a cooperating witness who testified that he had previously seen a hoodie at Davis's house that was like the one worn by the lookout at the robbery.

Jurors heard that when police interviewed Davis, he denied knowing anything about the Church's Chicken robbery. When he was told that his DNA was found on parts of the gun, Davis said he "probably touched" a gun that "these dudes" had showed him "uh, probably like, five months ago"—which would have been in January. When police told him the robbery was in December, Davis said that he touched the gun "around November or something." Davis also said that he lived "right down the street" from the Church's Chicken and did not have a car. A detective testified that Davis lived three-tenths of a mile away and in the direction that the robbers had approached from and fled toward.

Davis admits that the Government proved that the Church's Chicken robbery happened, but he says there was insufficient evidence that he was one of the two robbers. His argument is not without merit; the evidence at trial was not overwhelming. The DNA evidence showed Davis handled the gun barrel, but not when. Both robbers were masked, and no one could positively identify Davis from the video. And while a cooperating witness testified about the hoodie, on cross examination Davis effectively questioned whether the hoodie worn at the robbery was the same stained hoodie seen before.

But we do not require overwhelming evidence following a jury verdict. We ask instead whether any reasonable jury could find Davis guilty beyond a reasonable doubt. The DNA evidence, the cooperator testimony about the hoodie, the surveillance video from four angles, Davis changing his story about the gun, and the fact that he lived near the scene was enough for the jury to conclude beyond a reasonable doubt that Davis was one of the two robbers. *See United States v. Perry*, 61 F.4th 603, 607 (8th Cir. 2023) ("Courtroom identification is not necessary when evidence is sufficient to permit the inference that the defendant on trial is the person who committed the acts charged." (cleaned up)). There may be other, Davis-friendly

explanations for some of this evidence. But the jury was free to draw its own reasonable inferences in the Government's favor. *See id.* ("This court reverses a conviction, including one based on circumstantial evidence, 'only if no construction of the evidence exists to support the jury's verdict.'" (citation omitted)).

## II.    Jury Verdict Form

The jury found Davis guilty of using a firearm during and in relation to a crime of violence but selected the option on the verdict form that Davis had "neither brandished nor discharged a firearm." Davis argues that the verdict form is inconsistent because the jury "did not determine what acts [Davis] did to justify that conclusion." But the instruction says, "[y]ou may find that a firearm was used . . . if you find that it was brandished, displayed, or discharged." The jury must have found Davis displayed the gun, which satisfies the "use" prong of § 924(c)(1)(A). *United States v. Summers*, 137 F.3d 597, 601 (8th Cir. 1998) (citing *Bailey v. United States*, 516 U.S. 137, 148 (1995)). We find no error, and certainly no plain error, in the jury instructions or verdict form. *See United States v. Chappell*, 665 F.3d 1012, 1014 (8th Cir. 2012) (plain error review when defendant did not object to jury instructions or verdict form at trial).

## III.    Sentence

Davis's guidelines range was 360 months to life plus mandatory consecutive sentences of 84 months and 60 months. The Government moved for a downward departure to 180 months in prison, *see* U.S.S.G. § 5K1.1, which the district court granted. The court denied Davis's request for a further downward variance.

Davis argues that his sentence is substantively unreasonable because the district court did not adequately consider that he grew up homeless and suffered from addiction and that it overstated the seriousness of his criminal history. We disagree. "A district court has wide latitude in weighing relevant factors, including discretion to assign more weight to the offense's nature and circumstances than to the

-4-

defendant's 'mitigating personal characteristics.'" *United States v. Anderson*, 90 F.4th 1226, 1227 (8th Cir. 2024) (citation omitted). And because the district court departed downward and imposed a below guidelines range sentence, "it is nearly inconceivable that the court abused its discretion in not varying downward still further." *United States v. McCauley*, 715 F.3d 1119, 1127 (8th Cir. 2013) (citation omitted); *see United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (standard of review).

## IV. Conclusion

Affirmed.

_____